UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DAVID ATHAN et al.,

    Plaintiffs,

v.

UNITED STATES STEEL,

    Defendant.

Case No. 17-14220
Hon. Terrence G. Berg

**ORDER DENYING IN PART AND GRANTING IN PART DEFENDANT'S MOTION TO DISMISS**

**I.    Introduction**

Plaintiffs brought this case under the Fair Labor Standards Act ("FLSA"), claiming that they were paid late or not at all for work performed for Defendant United States Steel. Some late or unpaid hours were overtime hours, in excess of 40 hours per week, and some were regular hours in weeks in which Plaintiffs worked no more than 40 hours. For non-overtime hours, Plaintiffs claim that they are entitled to minimum wage, $9.25 per hour,[1] in addition to statutory liquidated damages. For overtime hours, Plaintiffs request one and one-half times their regular rate plus an equal amount of liquidated damages, which is the amount prescribed by

---

[1] The statutory federal minimum wage is $7.25 per hour. However, in Michigan, employers subject to FLSA must meet the state hourly minimum wage of $9.25 per hour. M.C.L. § 408.420(1).

1

statute. Plaintiffs' claims are brought pursuant to 29 U.S.C. §§ 206(a) and 207(a).

Defendant moved to dismiss the Second Amended Complaint. For the reasons following, the Court **DENIES in part and GRANTS in part** Defendant's Motion to Dismiss.

## II. Background

Defendant uses a timekeeping system that electronically tracks when employees are at work through a badge-swiping system. The foundational allegation of Plaintiffs' suit is that Defendant issues paychecks with incorrect hours. Plaintiffs claim that this frequently results in paycheck shortages.

After issuing an incorrect paycheck, Defendant generally corrects it later. This correction is described as "retro pay" on employees' paychecks. Plaintiffs have submitted a number of pay stubs showing the "retro pay" adjustment. But the record does not reveal any pattern as to when paychecks will be corrected and Plaintiffs claim that some employees remain unpaid for certain hours that they worked.

FLSA is a federal statute that, at its root, seeks to prevent employers from treating workers unfairly in their wages and hours. *Tenn. Coal, Iron & R. Co. v. Muscoda Local No. 123*, 321 U.S. 590, 592 (1944). FLSA is often called the "minimum wage/maximum hours law" because it establishes a minimum wage for the 40-hour

week, and requires that any hours over 40 in a week be paid overtime at time-and-a-half their regular wage. Section 206(a) sets the minimum wage for employees "who in any workweek [are] engaged in commerce or in the production of goods for commerce" at $7.25 per hour. Section 207(a) prohibits employers from employing persons "for a workweek longer than forty hours unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed."

Plaintiffs allege that Defendant violated § 206 by failing to make minimum wage payments on time (Count I), and failing to make minimum wage payments at all (Count III). Plaintiffs allege violations of § 207 in Defendant's failure to make timely overtime payments (Count II) and failure to pay some overtime hours at all (Count IV).

### III. Standard of Review

A party may move to dismiss under Federal Rule of Civil Procedure 12(b)(6) for "failure to state a claim upon which relief can be granted." Rule 12(b)(6) is read in conjunction with the pleading standard set forth in Rule 8(a), which requires "a short and plain statement of the claim showing that the pleader is entitled to relief." Rule 8(a)(2); *see Ashcroft v. Iqbal*, 556 U.S. 662, 677–68 (2009).

This standard does not require particularly detailed factual allegations. *Iqbal*, 556 U.S. at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). However, a party's "obligation to provide the 'grounds' of his 'entitle[ment]' to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (internal citations omitted). To survive a Rule 12(b)(6) motion, the complaint and any other matters properly considered must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570).

A claim has facial plausibility when the pleaded factual content allows the court, drawing upon its "judicial experience and common sense," to reasonably infer that the defendant is liable for the misconduct alleged. *Id.* at 678 (citing *Twombly*, 550 U.S. at 556), 679. "But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Id.* at 679 (quoting Rule 8(a)(2)).

IV. Analysis

### a. Minimum Wage Claims under § 206(a)

The Supreme Court has held that the right to payment of minimum wage under FLSA is the right to "on-time" payment. *Brooklyn*

4

*Savings Bank v. O'Neil*, 324 U.S. 697, 707 (1945). The Court therefore considers Plaintiffs' allegations of untimely payment and nonpayment together.

An employer violates § 206 when it fails to pay a minimum-wage worker for the full number of hours she worked in a timely manner. This kind of claim, seeking compensation for the "gap" between the time actually worked at minimum wage and the time for which a worker has been paid, would be valid under the Act. But when an employee earning more than minimum wage is underpaid during a given pay period, and her earnings averaged over that period nevertheless exceed the the minimum wage, FLSA does not permit recovery of that kind of "gap time"[2] because the employer did not violate the mandate to pay the minimum wage. Defendant argues that Counts I and III fall into this non-compensable "gap time" category. ECF No. 39 PageID.1621. Plaintiffs' Response does not appear to address this issue, repeating only that Plaintiffs are requesting minimum wage for hours worked under 40 in a workweek. ECF No. 40 PageID.1749.

### i. Pure gap time

---

[2] The term "gap time" is commonly used in FLSA case law, but rarely defined. Based on context in the case law, the term is used to describe the gap between hours paid and non-overtime hours worked. *See, e.g.*, *Monahan v. County of Chesterfield, Va.*, 95 F.3d 1263, 1266 (4th Cir. 1996) (writing that the lower court "coined" the term "overtime gap time" to describe hours worked between 135—the amount paid—and 147—the overtime threshold—in a 24-day pay period where the employee worked more than 147 hours).

There are two types of gap time claims. "Pure gap time," refers to hours worked less than 40 hours in a workweek where the employee has not worked any overtime. For example, if an employee works 37 hours in one week but is only paid for 35 hours, the 2 hours difference is pure gap time—it falls in the "gap" between hours paid and 40 hours. In colloquial terms, this would be referred to as regular, or non-overtime hours. An employee who was not paid for those 2 hours of time would not have a cause of action under the FLSA, so long as the total amount she *was* paid, divided by 37 hours, exceeds the minimum wage of $7.25 per hour.

"[A]ccording to the vast majority of cases, one cannot bring an action under the FLSA for 'gap time' in the absence of overtime work and in the absence of an allegation that the average wage falls below the federal minimum wage." *Basset v. Tennessee Valley Auth.*, No. 5:09-CV-00039, 2013 WL 2902821, at *10 (W.D. Ky. Jun. 13, 2013). The Sixth Circuit implicitly adopted this rule in *U.S. Dept. of Labor v. Cole Enters.*, 62 F.3d 775 (6th Cir. 1995) (noting that "several courts have held that an employer meets the minimum wage requirements if the total weekly wage paid is equal to or greater than the number of hours worked in the week multiplied by the statutory minimum hourly rate" and further finding that even under that rule, the defendant had not paid his employees minimum wage). Based on *Cole*, the Court finds that Plaintiffs have

not stated a claim under Counts I and III as to any individual Plaintiff who worked less than 40 hours in a workweek. This is because, according to the record, no employee who was paid for less than 40 hours in a week could be shown to have earned, on average, less than the the minimum wage.

### ii. Overtime gap time

The second type of gap time occurs when an employee has worked more than 40 hours in one workweek (and is therefore eligible to receive overtime pay) but nevertheless has not been paid for all 40 of the regular-time hours that she worked at the regular wage rate. Overtime hours are therefore pertinent to analysis of the claim. However, though it contains the word "overtime," a claim for "overtime gap time" remains a claim under § 206—the minimum wage provision—and not § 207, the overtime wage provision. The claim is one for unpaid wages earned for regular time (that is—for 40 hours or less) in a week when the employee has also worked overtime hours.

As will be discussed below, the federal courts of appeal that have addressed this issue are divided, and the Sixth Circuit has not yet considered the question. The Department of Labor has issued a nonbinding statement of general policy on this matter, stating, "[E]xtra compensation for the excess hours of overtime work under the Act cannot be said to have been paid to an employee unless all

7

the straight time compensation due him for the nonovertime hours under his contract (express or implied) or under any applicable statute has been paid." 29 C.F.R. § 778.315.

In line with the Department of Labor, "the Fourth Circuit has found that FLSA provides a remedy for gap time compensation in work periods where the FLSA overtime provision is violated." *Murphy v. First Student Mgmt., LLC*, No. 1:16-cv-01966, 2017 WL 346977, at *3 (N.D. Ohio Jan. 24, 2017) (citing *Monahan*, 95 F.3d at 1263 (4th Cir. 1996)). Similarly, the Ninth Circuit found the Department of Labor's interpretation persuasive in *Donovan v. Crisostomo*, 689 F.2d 869, 876 n.13 (9th Cir. 1982). On the other hand, the Second Circuit has found that "FLSA does not provide for a gap-time claim even when an employee has worked overtime." *Lundy v. Catholic Health Sys. of Long Island, Inc.*, 711 F.3d 106, 116 (2d Cir. 2013). While the Sixth Circuit Court of Appeals has not addressed the issue, several district courts within our Circuit have adopted the Second Circuit's approach in *Lundy*. *See, e.g.*, *Murphy*, 2017 WL 346977; *Flexter v. Action Temporary Servs.*, No. 2:15-cv-754, 2016 WL 7852351 (S.D. Ohio Mar. 25, 2016); *Bassett v. Tennessee Valley Auth.*, No. 5:09-CV-00039, 2013 WL 2902821 (W.D. Ky. Jun. 13, 2013).

In the Sixth Circuit, "Department of Labor interpretative regulations under the FLSA constitute a body of experience and informed judgment to which courts may properly resort for guidance." *Murphy*, 2017 WL 346977, at *4 (citing *Justice v. Metro. Gov't of Nashville, Davidson Cty., Tenn.*, 4 F.3d 1387, 1393 (6th Cir. 1993)). But a court may not disregard the plain text of a statute in favor of a contradictory administrative opinion. "If the language of the statute is clear, a court must give effect to this plain meaning." *Broad. Music, Inc. v. Roger Miller Music, Inc.*, 396 F.3d 762, 769 (6th Cir. 2005).

In this case, the text of the statute is clear insofar as it does not provide a remedy for unpaid straight time hours, so long as the average wage paid exceeds the federal minimum. The statute makes no distinction on this point between pure gap time and overtime gap time—it includes neither. This Court therefore joins other district courts in the Sixth Circuit in finding that claims for gap time are not cognizable under the FLSA, regardless of whether Plaintiffs seek compensation for pure gap time or overtime gap time. This is true so long as the average wage Plaintiffs received exceeds the federal minimum wage. Based on the Complaint, it appears that Plaintiffs' average wages never fell below the federal minimum wage.

Consequently, Defendant's Motion to Dismiss is granted as to Counts I and III.

### b. Overtime Wage Claims under § 207

While § 207 guarantees overtime payment at one-and-one-half times the employee's regular rate, the statute is silent as to the timing of that payment. Here, Plaintiffs allege violations of § 207 for both untimely payment (Count II) and non-payment (Count IV) of overtime wages. Analysis of Plaintiffs' claims for overtime payment is complicated because it requires the consideration of out-of-circuit case law, agency interpretation, the parties' collective bargaining agreement, and another federal statute, the Labor Management Relations Act (LMRA).

### i. Applicable law

The Department of Labor guidance states:

> There is no requirement in the Act that overtime compensation be paid weekly. The general rule is that overtime compensation earned in a particular workweek must be paid on the regular pay day for the period in which such workweek ends. When the correct amount of overtime compensation cannot be determined until some time after the regular pay period, however, the requirements of the Act will be satisfied if the employer pays the excess overtime compensation as soon after the regular pay period as is practicable. Payment may not be delayed for a period longer than is reasonably necessary for the employer to compute and arrange for payment of the amount due and in no event may payment be delayed beyond the next payday after such computation can be made.

29 C.F.R. § 778.106.

Defendant argues that resolution of this issue requires an interpretation of the parties' collective bargaining agreement (CBA). The CBA reads in pertinent part: "If an error in an amount greater than $150.00 has been made in the payment of an Employee's wages related to hours or positions worked, and the correction of said error is authorized by his/her supervisor, the correction shall be processed by Payroll within three (3) business days of such authorization." ECF No. 39-4 PageID.1676. At oral argument on this motion, Defendant took the position that this portion of the CBA represents the parties' agreement to implement the phrase "as soon as practicable" that appears in the Department of Labor's interpretive bulletin.[3]

It is well-settled that collective bargaining agreements cannot waive FLSA's statutory rights. *Featsent v. City of Youngstown*, 70 F.3d 900, 905 (6th Cir.1995). But Department of Labor interpretive bulletins are not binding. There appears to be some disagreement between the circuits about timing of overtime payments and how that relates to provisions in a CBA. The Sixth Circuit has not spoken on the issue.

The Seventh Circuit wrote that "[a]lthough the 'general rule is that overtime compensation earned in a particular workweek must

---

[3] The Court finds this claim debatable at best. The CBA provision says nothing about payment for overtime hours. In fact, it says nothing about payment at all. It refers only to "process[ing]" a correction.

11

be paid on the regular pay day for the period in which such workweek ends,' 29 C.F.R. § 778.106, nothing in the FLSA prevents a collective bargaining agreement from providing a different rule." *Reich v. Interstate Brands*, 57 F.3d 574, 576 (7th Cir. 1995). Seven years later, however, without explicitly overturning *Reich*, the Seventh Circuit found that FLSA prohibits employers from using "a method of payment that would allow it to pay its overtime obligations at a time *far removed* from when that overtime amount was due." *Howard v. City of Springfield*, 247 F.3d 1141, 1148 (7th Cir. 2001) (emphasis added). The Third Circuit found the Department of Labor bulletin persuasive and adopted it to find that "the failure of an employer subject to the FLSA to pay overtime promptly . . . violates the Fair Labor Standards Act" even when the applicable CBA set forth a delayed payment schedule and some employees even preferred that the payments be delayed. *Brooks v. Village of Ridgefield Park*, 185 F.3d 130, 140 (3d Cir. 1999).

The parties' CBA is relevant because "claims which rest on interpretations of the underlying collective bargaining agreement must be resolved pursuant to the procedures contemplated under the LMRA." *Martin v. Lake Count Sewer Co., Inc.*, 269 F.3d 673, 680 (6th Cir. 2001). The LMRA, passed in 1947, governs "suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce. . ." 29

U.S.C. § 185(a). The Supreme Court has found that a six-month statute of limitations applies to claims under the LMRA. *DelCostello v. International Brotherhood of Teamsters*, 462 U.S. 151 (1983); 29 U.S.C. § 160(b). An employee is also "required to attempt to exhaust any grievance or arbitration remedies provided in the collective bargaining agreement" before bringing an LMRA claim. *DelCostello*, 462 U.S. at 163 (citing *Republic Steel Corp. v. Maddox*, 379 U.S. 650 (1965). Plaintiffs agree that if their claims were subject to LMRA procedures, "Plaintiffs' damages would be limited to only the breach of CBA claims that have occurred within the last six months and for which they have followed the grievance procedure in the CBA" and that such a decision would "greatly limit the amount of liability to which Defendant is exposed." ECF No. 40 PageID.1741.

But the Sixth Circuit has declined to use the LMRA to replace the process for asserting statutory rights where the right asserted was *not* based on the terms of the CBA. *See, e.g.*, *Watts v. United Parcel Service*, 701 F.3d 188, 192–93 (6th Cir. 2012) (finding that *Martin* did not prohibit a plaintiff from vindicating her statutory rights under the Americans with Disabilities Act rather than the LMRA). Therefore, so long as Plaintiffs' claims for overtime payment are based solely on rights in the FLSA, rather than rights in

13

their employment contract, those claims are properly brought in Plaintiffs' Complaint.

### ii. Whether Plaintiffs' claims are based on the CBA

While Plaintiffs frame the claims in their Second Amended Complaint as arising solely under their right to overtime payment as set forth in the FLSA, Defendant argues that the CBA is integral to determining when Plaintiffs were due overtime. Drawing an analogy to *Reich*, Defendant argues that the CBA essentially replaces the Department of Labor's bulletin, and that this is permissible under the logic of the analysis in *Reich*.[4]

In Counts II and IV—the ones at issue here—Plaintiffs set forth their cause of action for overtime payments under FLSA. Some of the individual Plaintiffs' declarations do reference the CBA provision related to paycheck errors, but reference alone in a declaration does not constitute reliance on a right for purposes of a cause of

---

[4] At the same time, perhaps as an alternative argument, Defendant contends that the CBA's provisions requiring the processing of errors greater than $150 within three business days of being authorized by a supervisor represent the agreement's attempt to meet the "as soon as practicable" language found in the Department of Labor interpretive bulletin. But under the DOL guidance, the allowance to pay overtime "as soon as practicable" applies *only* where the amount of overtime is not calculable at the end of the pay period in which the employee worked overtime hours. Here, there is nothing in the record showing that the amount of overtime was not calculable at the end of the pay period in which employees worked those hours. Indeed, the allegations contained in Plaintiffs' Second Amended Complaint, which must be taken as true, suggest that it would be quite practicable to pay overtime hours much earlier than the provision in the CBA requires.

action. In fact, Plaintiffs do not allege that the CBA was violated at all.

Notably, Defendant *could* meet all the requirements set forth in the CBA while still violating FLSA. The Seventh Circuit addressed such a situation in *Howard*, finding that the payment schedule in the CBA itself did not comply with FLSA because it allowed the employer to pay its overtime obligations long after those obligations were incurred and the amount due was calculable. 247 F.3d at 1148.

In this case, the three-day period for processing corrections contained in the CBA only begins to run after an employee has discovered an error and then sought and obtained supervisor approval to correct it. That provision says nothing about the acceptable time limit between the flagging by the employee and the approval by the supervisor, nor about what happens if an employee fails to discover the payroll error, nor about when the overtime must actually be *paid* (only timely *processing* of the error is guaranteed). Yet, following the logic of the Seventh Circuit in *Howard* and the Third Circuit in *Brooks*, all three of these issues are important to determine whether FLSA has been violated.[5] Because the issue here is plainly

---

[5] Defendant maintained at oral argument that the fact that these matters are not clear from the text of the CBA means that the claim requires interpretation of the CBA, bringing this case within the purview of the LMRA. But the difference here is that the timely *payment of overtime* is not directly addressed by the CBA, only the timely *processing of errors* of a *certain amount* that have been *cleared by a supervisor*. The requirements of the LMRA come into play

15

whether Defendant complied with FLSA, *not* whether it complied with the CBA, the Court finds that Plaintiffs' Second Amended Complaint does not rely on rights in their CBA such that LMRA procedures would apply.

Because Plaintiffs are not bringing a breach of contract claim, arguing that Defendant violated the terms of their CBA, the Court need not interpret any language in the CBA. The Court need only decide whether the Complaint adequately alleges a plausible claim that Defendant violated FLSA. While it may be relevant to consider whether the CBA itself violates FLSA, that does not mean the LMRA applies. *See Howard*, 247 F.3d at 1148. Plaintiffs have plausibly alleged violations of FLSA in Count II, timely payment of overtime, and Count IV, non-payment of overtime. Defendant's Motion to Dismiss Counts II and IV of Plaintiffs' Second Amended Complaint is denied.

## V. Conclusion

For the foregoing reasons, Defendant's Motion to Dismiss is **GRANTED as to Counts I and III and DENIED as to Counts II and IV**.

---

when a plaintiff alleges that a provision *in* the CBA was violated, not when the claim addresses a matter not covered in the CBA.

**SO ORDERED.**

Dated: February 4, 2019  s/Terrence G. Berg
TERRENCE G. BERG
UNITED STATES DISTRICT JUDGE

**Certificate of Service**

I hereby certify that this Order was electronically filed, and the parties and/or counsel of record were served on February 4, 2019.

s/A. Chubb
Case Manager