## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

**DAVID ATHAN,  DARYL JACKSON,
COREY PARKER AND ROBERT
FLANNERY,** on behalf of themselves
and all other persons similarly situated,
known and unknown,

Case No. 2:17-cv-14220

Hon. Terrence G. Berg

Plaintiffs,

vs.

**UNITED STATES STEEL CORP**., a
foreign profit corporation,

Defendant.

_____

## <u>Exhibit 4 – Settlement Agreement</u>

The Parties, as instructed by the Court on February 24, 2021, at the hearing

on the Parties' Joint Motion to Approve FLSA Settlement, hereby submit their

Release and Settlement Agreement, for filing as contemplated by footnote 4 of their

Joint Motion (ECF No. 81, PageID.2701) and as instructed by the Court.

Dated:  February 26, 2021

Respectfully submitted by:


s/ Jesse L. Young
Jesse L. Young (P72614)
KREIS ENDERLE, P.C.
P.O. Box 4010
Kalamazoo, MI  49003
T: 269-324-3000
jyoung@kehb.com

Bryan Yaldou (P70600)
THE LAW OFFICES OF BRYAN
YALDOU, PLLC
23000 Telegraph, Suite 5
Brownstown, MI 48134
T: 734-692-9200
bryan@yaldoulaw.com

*Attorneys for Plaintiff*

s/ Margaret Carroll Alli
Margaret Carroll Alli  (P38281)
Lauren Zeldin (Ga. Bar No. 368999)
Joshua P. Lushnat (P75319)
OGLETREE,     DEAKINS,     NASH,
SMOAK & STEWART, PLLC
34977 Woodward Avenue, Suite 300
Birmingham, MI 48009
T: 248-593-6400
meg.alli@ogletree.com
lauren.zeldin@ogletree.com
joshua.lushnat@ogletree.com

*Attorneys for Defendant*

46168066.1

1

## RELEASE AND SETTLEMENT AGREEMENT

This **Release and Settlement Agreement** ("Settlement Agreement") is entered into by and between David Athan, Daryl Jackson, Corey Parker, Josh Flannery as Personal Representative of the Estate of Robert Flannery, and Dennis Smith (referred to herein as the "**Named Plaintiffs**") and the Opt-in Plaintiffs listed in the attached schedule ("**Opt-in Plaintiffs**"), and United States Steel Corporation ("**U. S. Steel**" or "**Defendant**"). In this Agreement, the "Named Plaintiffs" and "Opt-in Plaintiffs" shall be collectively referred to as "Plaintiffs," and Plaintiffs and U. S. Steel shall be collectively referred to as the "Parties." Plaintiffs enter into this Agreement for themselves, individually, as well as their spouses, beneficiaries, heirs, administrators, executors, assigns, agents, and representatives.

**WHEREAS**, the Parties desire to compromise and settle the claims in the lawsuit titled *David Athan, Daryl Jackson, Corey Parker, Robert Flannery, on behalf of themselves and all other persons similarly situated, known and unknown, v. United States Steel Corporation* (Case No. 2:17-cv-14220-TGB), pending in the United States District Court for the Eastern District of Michigan, and any other related issues or disputes between them (the "Action"), in a comprehensive manner pursuant to the terms of this Agreement;

**NOW, THEREFORE**, for and in consideration of the above and the additional covenants and agreements set forth herein, the Parties expressly agree as follows:

## I.  TERMS OF SETTLEMENT

**A.**  **Motion for Approval of Confidential Settlement Agreement and Dismissal with Prejudice.** On or before February 5, 2021, the Parties will file a Joint Motion for Approval of Settlement with a Stipulated Order of Settlement, copy attached, requesting that the Court approve the settlement of Plaintiffs' federal Fair Labor Standards Act ("FLSA") claims and dismiss Plaintiffs' wage and hour claims with prejudice. The Parties intend that the amount of the Total Settlement Proceeds and any Individual Payment, as defined and described in this Agreement, are to remain confidential. Unless otherwise ordered by the Court, the Stipulated Order Approving Settlement filed with the Court will contain all of the material terms of this Agreement except for the amount of the Total Settlement Proceeds and any Individual Payment as defined in this Agreement. The Parties agree to request that the Court review this Agreement *in camera* for the purposes of maintaining the confidentiality of the amount of the Total Settlement Proceeds and any Individual Payment. If the Court refuses to allow this Agreement to be reviewed *in camera*, the Parties agree to comply with the Court's instructions for submitting this Agreement to the Court and obtaining approval of the Parties' settlement. After approval of the Parties' settlement and dismissal of Plaintiffs' claims with prejudice, the Court shall retain jurisdiction to enforce the terms of this Agreement, subject to the arbitration provision in Section II, Paragraph R, below. The Court shall retain jurisdiction to enforce the arbitrator's decision regarding the enforcement of this Agreement's terms. In the event this Agreement is not approved by the Court in all material respects, this Agreement shall have no legal effect and the Total Settlement Proceeds and any Individual Payment will remain the property of U. S. Steel, and no Plaintiff will have any right to any payment from U. S. Steel. In such case, the Parties' litigation positions will revert to the status quo ante before execution of this Agreement with no waiver, in any way, of their claims or defenses in this Action, including, but not limited to, defenses to the merits of Plaintiffs' claims and to collective action treatment of Plaintiffs' claims.

**B.**  **Mediation Costs and Third Party Administrator.** In addition to the Total Settlement Proceeds, as defined below, U. S. Steel agrees to pay the full amount of the mediator David Calzone's costs and fees, and the full amount of the costs and fees incurred by a mutually agreed upon third-party administrator to be used to administer the Individual Payments described below.

**C.**   **Conditions to Payment of the Total Settlement Proceeds.**   In consideration of the terms and conditions in this Agreement, including but not limited to the release of claims and dismissal of the lawsuit with prejudice, U. S. Steel agrees to pay the total gross amount of ███████████ ████████████████████████████████████████████ ("Total Settlement Proceeds") to the third-party administrator, as set forth in Paragraph D below, to be paid to Plaintiffs and their Counsel as allocated in this Agreement upon the occurrence of each of the following events:

1. The Court has entered an order approving the Parties' Joint Motion for Approval of Settlement and Dismissal with Prejudice in substantially similar form as attached at **Tab A**; and

2. Plaintiffs have delivered to Ogletree, Deakins, Nash, Smoak & Stewart, P.C., 34977 Woodward Ave., Suite 300, Birmingham, MI 48009, attn: Meg Alli, counsel for U. S. Steel ("U. S. Steel's Counsel") fully executed copies of this Agreement signed by the Named Plaintiffs;

**D.**   **Payment of Total Settlement Proceeds**.   U. S. Steel will tender the Total Settlement Proceeds to the third-party administrator within 15 business days of the last of the conditions set forth above in Paragraph C.  On behalf of U. S. Steel, the third party administrator will then pay the Total Settlement Proceeds as follows:

1. **Timing of Payment.**  The third party administrator will pay the Total Proceeds as allocated in this Paragraph D within 10 business days of all of the following conditions being satisfied:

   a. Plaintiffs' Counsel having delivered to the third party administrator a fully completed IRS Form W-9 for Plaintiffs' Counsel; and

   b. Plaintiffs having cooperated with and provided any necessary tax or other documents reasonably requested or required by the third party administrator necessary for the administrator to properly effectuate any payment to any Plaintiff and to protect U. S. Steel's income tax reporting concern.  However, the third party administrator should use all reasonable efforts to avoid having to collect IRS W-9 Forms from each Plaintiff and opt-in Plaintiff.

2. **Payments to Plaintiffs.**  ████████████████████████████████ ███████████████ of the Total Settlement Proceeds will be paid to Plaintiffs in the individual amounts provided in the schedule attached at Tab B (the "**Individual Payments**"). The procedure for tendering the Individual Payments to Plaintiffs is as follows:

   a. **Sent to Last known address**: Individual Payments, as set forth in the schedule attached at Tab B, will be sent by first-class U.S. Mail to each Plaintiff at their last known address or as obtained by the third party administrator's pre-mailing NCOA search;

   b. **Check Legend**: All checks issued will contain the phrase "Athan v. U. S. Steel, No. 17-cv-14220" in the memo line and the release language referred to below in Paragraph E, sub-paragraph 3, and attached at Tab C.

   c. **Uncashed Checks:** All checks issued to the Plaintiffs will be valid for 180 days.  If any check for Individual Payments are returned to the third party administrator with a forwarding address for any Plaintiff, the administrator will promptly send the check again by first-class U.S. Mail to the forwarding address provided.  The administrator will maintain documentation of all its efforts made in this regard for a period of one year.  In

the event any checks are not cashed within 180 days of being first issued, those funds will revert back to U. S. Steel.

    **d.**   **Undeliverable Checks:**  If any check for any Individual payment is returned to the administrator without a forwarding address or as undeliverable for any Plaintiff, the administrator shall take reasonable steps to obtain a correct address for the Plaintiff within the 180 day period. Any check returned as undeliverable shall be skip traced at least one time to obtain a new address and the administrator will promptly send the check again by first-class U.S. Mail to the new address provided within the above 180 day period. The administrator shall maintain documentation of these efforts for a period of one year.

**3.**  **Calculation of Individual Payments.** After deduction of Plaintiffs' Counsel's attorneys' fees and expenses and the Service Award payments described below, the Individual Payments in the schedule attached at Tab B were calculated solely by Plaintiffs' Counsel based proportionally on each Plaintiffs' alleged claimed damages during the Released Period.

**4.**  **Tax Treatment of the Individual Payments.**  Plaintiffs and Plaintiffs' Counsel expressly acknowledge and agree that, after a period of discovery in the Action, damages in the Action are limited only to liquidated damages under the FLSA for alleged delayed payment of overtime wages because the wages were previously provided.  Plaintiffs acknowledge that they are not owed any back wages for unpaid overtime.  Therefore, because all Individual Payments are allocated to liquidated damages, the Individual Payments shall be reported on an IRS Form 1099-Misc. The Parties agree that each IRS Form 1099-Misc issued to each Plaintiff from the third party administrator will be prepared in compliance with applicable IRS regulations and, at a minimum, will identify (a) the Plaintiff's applicable Individual Payment on the schedule attached at Tab B, and (b) the Plaintiff's prorated portion of Plaintiffs' Counsel's Attorney Fees as allocated to the Plaintiff under applicable tax laws.

**5.**  **Service Awards to Named Plaintiffs.** In exchange for the general release contained in this Agreement, ████████████████████ of the Total Settlement Proceeds will be paid in five equal amounts of ████████ to each of the Named Plaintiffs (David Athan, Darryl Jackson, Corey Parker, Josh Flannery, as Personal Representative of the Estate of Robert Flannery, and Dennis Smith) as a Service Award for serving in a representative capacity and/or participating in discovery, including written discovery and depositions. The Service Awards will be reported in accordance with applicable IRS regulations on an IRS Form W-2 issued to each Named Plaintiff and will be subject to all appropriate tax withholdings made in the usual and ordinary course of business.

**6.**  **Plaintiffs' Counsel's Attorneys' Fees and Expenses.** ████████████████████████ ████████████████████ of the Total Settlement Proceeds will be paid to Plaintiffs' Counsel for attorneys' fees and expenses (████████████ in fees and ████████ in expenses) incurred in the Action. The third party administrator will issue to Plaintiffs' Counsel an IRS Form 1099-Misc with respect to the attorneys' fees and expenses. One check for ████████ will be issued to Plaintiffs' Counsel as follows: to The Law Offices of Bryan Yaldou, PLLC, c/o Bryan Yaldou, 23000 Telegraph Rd., Ste. 5, Brownstown, Michigan 48134.

**7.**  **Approval for Payment of Attorneys' Fees and Expenses.** Plaintiffs will seek, and U. S. Steel will not oppose, approval of their Attorneys' Fees and Expenses in the Joint Motion for Approval of

Settlement. Except for the payment of Plaintiffs' Counsel's Attorneys' Fees and Expenses, each party shall be responsible for payment of their own attorneys' fees and costs.

8. **Tax Liabilities.** Other than the withholding and reporting requirements herein, which will be the responsibility of the third party administrator, Plaintiffs shall be solely responsible for the reporting and payment of their share of any federal, state, and/or local income or other taxes on any payments received under this Settlement.  Defendant will be responsible for providing the employer's share of payroll taxes, which the third party administrator will be responsible for withholding and reporting. The third-party administrator will provide an IRS Form W-2 for the Service Awards. Defendant and Plaintiffs' Counsel make no representations as to the tax treatment or legal effect of the payments called for under this Agreement, and Plaintiffs are not relying on any statement or representation by Defendant or Plaintiffs' Counsel in this regard.

   Plaintiffs shall hold Defendant harmless from any and all liabilities or claims that may be brought against Defendant regarding any taxes or withholding due any governmental entity, including any interest or penalties, based upon the consideration given to Plaintiffs pursuant to this Settlement Agreement, provided that Defendant has given notice to Plaintiffs' Counsel that an inquiry has been made to it by any taxing authorities. This hold harmless provision does not apply to Defendant's failure to pay the employer's share of any applicable payroll taxes. Plaintiffs understand that Defendant and the Released Parties are not responsible for any taxes that may be assessed to them individually as the result of their respective receipt of any payments made to them and their counsel as set forth in this Settlement Agreement, and that any division of the proceeds between Plaintiffs and their counsel in no way affects the validity of this Settlement Agreement or any of its covenants.

   The Parties agree that each Plaintiff will be responsible for filing and paying all applicable taxes on amounts paid to them and reported on a Form 1099. Plaintiffs' Counsel will be responsible for filing and paying all applicable taxes on amounts paid to Plaintiffs' Counsel on the Form 1099.

9. **Benefit Plans.**  No payment made to any Plaintiff is considered to be compensation or earnings for purposes of any benefit or incentive plan or program, and will not trigger any contribution by U. S. Steel to any benefit, incentive, retirement, pension, benefit, or similar plan or program. This explicitly includes, by way of example, any plan or program referred to in any applicable labor agreement that governed the Plaintiff's employment.

   **E.    Release by All Plaintiffs.**  For the Released Period described below**,** Plaintiffs (each and every Opt-In Plaintiff and Named Plaintiff) fully and completely release and discharge the Released Parties from any and all federal, state, and local wage and hour claims, rights, demands, liabilities, and related causes of action of any kind whatsoever, including but not limited to, claims for unpaid wages, unpaid overtime compensation, delayed payment of any wages including overtime compensation, liquidated damages, interest, attorneys' fees, and expenses under the FLSA and any applicable state or local wage and hour laws, regulations, labor agreements, or common law.

1. **Released Parties.** The Released Parties include: United States Steel Corporation and its current or former parent companies, subsidiary companies, and/or related, affiliated, or predecessor companies, partnerships, and/or joint ventures, and, with respect to each, all of their past, present, and future employees, officers, partners, principals, directors, stockholders, owners, representatives, assigns, attorneys, agents, insurers, employee benefit programs (and

the trustees, administrators, fiduciaries, and insurers of such programs), and any other persons acting by or through any of the persons or entities listed in this subsection, and their successors.

2. **Released Period.** The "Released Period" for Named Plaintiffs shall mean the period of three (3) years prior to the date the Action was filed with the Court through and including the date on which the Court enters the Stipulated Order of Settlement. For the remaining Plaintiffs, the Released Period shall mean the period of three (3) years prior to the date each such Plaintiff filed a written Consent to Join the Action, plus any additional time tolled by agreement of the Parties, through and including the date on which the Court enters the Stipulated Order of Settlement.

3. **Release Printed on Check to Plaintiffs.** The Parties agree to include mutually agreed upon release language in the form attached at **Tab C** on each settlement check tendered to Plaintiffs, including but not limited to, all checks for payment of the Individual Payments. Upon entry of the Stipulated Order Approving Settlement, all claims by Plaintiffs that were or could have been asserted in the Action shall be dismissed in their entirety, with prejudice, and each Plaintiff is bound by this release (and the release contained on any check tendered to them for any Individual Payments) regardless of whether the checks for the Individual Payments are accepted, cashed, deposited, or otherwise negotiated by the Plaintiff.

F. **Confidentiality.** Except as expressly provided below or as otherwise expressly ordered by the Court, Plaintiffs *agree to maintain in strict confidence* the Total Settlement Proceeds and any Individual Payments under this Agreement. Plaintiffs agree not to disclose the Total Settlement Proceeds or any Individual Payment to any person, agency, business, organization, or other entity or third party (including, but not limited to, any current or former employee of U.S. Steel) except as provided below or as otherwise expressly ordered by the Court. Plaintiffs agree to take every reasonable precaution to prevent the disclosure of the Total Settlement Proceeds or any Individual Payment to third parties and, by way of example and not limitation, specifically agree not to issue any press releases or post on any websites, or any social media platform, any information concerning the Total Settlement Proceeds and/or any Individual Payments.

1. **Permitted Disclosure.** Notwithstanding the above, the Parties agree that nothing in this Agreement shall prohibit them from discussing the existence and terms of this Agreement with their spouse, or a tax, legal, or financial advisor, provided that before disclosing the terms of this Agreement, Plaintiffs must advise such persons or entities that the Total Settlement Proceeds and Individual Payments are confidential and cannot be disclosed to any third parties. Nothing in this Settlement Agreement prohibits Plaintiffs from cooperating with the EEOC or any other state or local fair employment practices agency or from reporting possible violations of federal or state law or regulation to any governmental entity, including but not limited to, the Department of Justice, the Securities and Exchange Commission, or from making any other disclosures expressly protected under applicable whistleblower provisions of applicable federal or state laws or regulations.

2. **Compelled Disclosure.** In the event that Plaintiffs are presented with a court order, subpoena, or other legal instrument that demands the disclosure of the Total Settlement Proceeds and/or any Individual Payment, Plaintiffs will: (a) immediately notify U. S. Steel's Counsel of the demand for disclosure and provide all such Counsel listed on this case with all material information pertaining to such demand; (b) take all steps reasonably necessary to prevent the disclosure of the Total Settlement Proceeds and/or any Individual Payment until such time as U. S. Steel has had a reasonable opportunity to file for a protective order or otherwise protect its interest in preventing the disclosure of the confidential information.

## II.     REPRESENTATIONS AND WARRANTIES

**A.     Authority.** The signatories below represent that they are fully authorized to enter into this Settlement Agreement and to bind the Parties hereto (including all Plaintiffs) to the terms and conditions in and required by this Agreement.

**B.     No Admission of Liability.** This Agreement is the result of a compromise of disputed claims and shall not be considered or construed in any way as an admission of correctness, liability, or responsibility on the part of any party. The Parties agree that they will never seek to introduce this Agreement as evidence of an admission of liability or an admission of any violation of any federal, state, or local laws.  Plaintiffs maintain that their claims have merit and that collective action treatment is appropriate; however, Plaintiffs further acknowledge that through this Agreement, U. S. Steel will not be deemed to admit or concede that collective action treatment is or was appropriate, or that Plaintiffs' claims have any merit. Rather, U. S. Steel has denied and continues to deny, specifically and generally, the claims asserted in the Action and any and all liability or wrongdoing of any kind whatsoever associated with the facts or claims alleged in this Action, including that continued collective action treatment is appropriate.

**C.     Advice of Legal Counsel.** The Parties obtained independent advice of legal counsel prior to signing this Agreement. The Parties execute this Agreement voluntarily and with full knowledge of its significance and with the express intention of extinguishing any and all obligations and claims owed by the Parties to each other arising out of or connected with the matters specified herein. The Parties acknowledge that they have been represented by competent, experienced counsel throughout all negotiations which preceded the execution of this Agreement, and this Agreement is made with the consent and advice of counsel who have jointly prepared this Agreement.

**D.     Non-Assignment of Claims.** The Plaintiffs represent and warrant that no portion of any claim, right, demand, action, or cause of action which he has or might have arising out of the matters referred to herein, nor any portion of any recovery or settlement to which he might be entitled, has been assigned or transferred to any other person, firm, or corporation, including by way of subrogation or operation of law or otherwise. In the event that any claim, demand, or suit should be made or instituted against any of the Parties because of any such purported assignment, subrogation, or transfer, the other party agrees to indemnify and hold harmless the party subject to such an action against such claim, suit, or demand and to pay and satisfy any such claim, suit, or demand, including necessary expenses of investigation, actual attorneys' fees, and costs.

**E.     Adequate Investigation of Facts.** In making and executing this Agreement, the Parties have made such investigation of the facts and the law pertaining to the matters described herein and this Agreement as they deem necessary, and they do not rely and have not relied upon any statement or representation, oral or written, made by any of the other Parties to this Agreement with regard to any of the facts involved in any dispute or possible dispute between any of the Parties hereto, or with regard to any of their rights or asserted rights, or with regard to the advisability of making and executing this Agreement.

**F.     Assumption of Risk of Mistake.** The Parties expressly assume the risk of any mistake of fact or the risk that the true facts might be other or different from facts now known or believed to exist, and it is the express intention of the Parties to forever settle, adjust, and compromise the disputes raised by the Actions, without regard to who may or may not have been correct in their respective understandings of the facts or the laws relating to the Action.

G. **Understanding of Agreement.** Each of the Parties has read and understands the contents of this Agreement.

H. **Binding upon Agents and Representatives**. Each and every term of this Agreement shall be binding upon the agents, representatives, insurers, employees, attorneys, heirs, administrators, executors, successors, and assigns of the respective Parties hereto and any parent, subsidiary, or affiliated entity of such Parties.

I. **Integration.** This Agreement constitutes the entire agreement between Plaintiffs, on the one hand, and U. S. Steel on the other hand, pertaining to the subject matter hereof, and further constitutes the final, complete, and exclusive expression of the terms and conditions of their agreement. Any and all prior agreements, representations, negotiations, and understandings, oral or written, express or implied, are hereby extinguished and merged herein.

J. **Cooperation.** The Parties agree to execute any and all other documents and instruments in writing which may be reasonably necessary or proper to effectuate and carry out the purposes of this Agreement.

K. **Modifications in Writing.** The Parties agree that any modifications to this Agreement must be made in writing and signed by all Parties, which for U. S. Steel requires the signature of a duly authorized Company official.

L. **Cooperation for Settlement Approval.** The Parties agree to work diligently together to file and submit all documentation and information necessary to the Court for purposes of obtaining approval of this settlement and dismissal of the Action with prejudice.

M. **Governing Law.** This Agreement shall be governed by and construed in accordance with the laws of the State of Michigan.

N. **Counterparts.** This Agreement may be executed in two or more counterparts, each of which shall be deemed an original, but all of which shall constitute one and the same written Agreement. This Agreement may be signed electronically.

O. **Construction.** The Parties, through their counsel, mutually participated in the drafting of this Agreement and agree that any rule of construction that agreements are to be construed against the drafter shall not apply to this Agreement.

P. **No Waiver.** No waiver of any breach of any term or provision of this Agreement shall be, or shall be construed to be, a waiver of any other breach of this Agreement. No waiver shall be binding under this Agreement unless in writing and signed by the party waiving the breach, and for U. S. Steel by a duly-authorized Company official.

Q. **Severability.** Should any provisions of this Agreement be declared or determined by a court or arbitrator to be illegal, unenforceable, or invalid, the validity of the remaining terms shall not be affected. The illegal, unenforceable, or invalid provision shall be severed to the minimum extent necessary, and the remainder of the Agreement will remain in full force and effect.

R. **Arbitration.** Any controversy, claim, or dispute by the Parties regarding the interpretation, enforcement, or breach of this Agreement, shall be submitted to final and binding

arbitration. *Named Plaintiffs expressly acknowledge that they are waiving their right to a trial in favor of private arbitration on the referenced claims or disputes.* The Parties agree to a private arbitrator and hereby appoint David Calzone, Esq., as the sole arbitrator. The arbitrator shall first try to informally resolve any dispute prior to invoking a formal fact-finding arbitration process, and will uphold the above terms and release of claims to the fullest extent allowed by applicable law and the terms of this Agreement, including first considering summary dismissal of the claim.  This arbitration provision is subject to the Federal Arbitration Act (FAA) and governed by the Employment Rules promulgated by the American Arbitration Association. The arbitration proceeding will allow the Parties to be represented by counsel at their respective expense, reasonable discovery, a hearing on the claim, and a written award containing findings of fact and conclusions of law. With the exception of any filing fee, U.S. Steel will cover all costs of the arbitration and arbitrator's fees—subject to any subsequent award of the arbitrator. Judgment upon the award rendered by the arbitrator may be entered in any court having jurisdiction.  The arbitrator may award attorney fees and costs, including reimbursement of the costs of arbitration and arbitrator's fees born by U.S. Steel, to the prevailing party in any dispute regarding alleged breach of this Agreement.

**NAMED PLAINTIFFS EACH ACKNOWLEDGE AND AGREE THAT HE HAS READ THIS AGREEMENT, HAS HAD THE OPPORTUNITY TO DISCUSS THE CONTENTS OF THIS AGREEMENT WITH HIS COUNSEL AND HAS DONE SO, AND THAT HE HAS ENTERED INTO THIS AGREEMENT KNOWINGLY AND VOLUNTARILY.**

WHEREFORE, the Parties hereto have executed this Agreement on the dates set forth below their respective signatures.

## <u>NAMED PLAINTIFFS</u>

**DAVID ATHAN**

**JOSH FLANNERY AS PERSONAL REPRESENTATIVE OF ROBERT FLANNERY**

_____
David Athan

Date:_____

_____
Josh Flannery

Date:_____

**DARYL JACKSON**

**DENNIS SMITH**

_____
Daryl Jackson

Date:_____

_____
Dennis Smith

Date:_____

**COREY PARKER**

_____

Corey Parker

Date:_____


<u>**DEFENDANT**</u>

**UNITED STATES STEEL CORPORATION**


*Rodney M. Torbic*
Rodney M. Torbic (Feb 5, 2021 14:01 EST)

By:  Rodney M. Torbic

Its:  Senior Counsel                          Dated:  February 5, 2021


45793743.1

Page 9 of 9

arbitration. *Named Plaintiffs expressly acknowledge that they are waiving their right to a trial in favor of private arbitration on the referenced claims or disputes.* The Parties agree to a private arbitrator and hereby appoint David Calzone, Esq., as the sole arbitrator. The arbitrator shall first try to informally resolve any dispute prior to invoking a formal fact-finding arbitration process, and will uphold the above terms and release of claims to the fullest extent allowed by applicable law and the terms of this Agreement, including first considering summary dismissal of the claim. This arbitration provision is subject to the Federal Arbitration Act (FAA) and governed by the Employment Rules promulgated by the American Arbitration Association. The arbitration proceeding will allow the Parties to be represented by counsel at their respective expense, reasonable discovery, a hearing on the claim, and a written award containing findings of fact and conclusions of law. With the exception of any filing fee, U.S. Steel will cover all costs of the arbitration and arbitrator's fees—subject to any subsequent award of the arbitrator. Judgment upon the award rendered by the arbitrator may be entered in any court having jurisdiction. The arbitrator may award attorney fees and costs, including reimbursement of the costs of arbitration and arbitrator's fees born by U.S. Steel, to the prevailing party in any dispute regarding alleged breach of this Agreement.

**NAMED PLAINTIFFS EACH ACKNOWLEDGE AND AGREE THAT HE HAS READ THIS AGREEMENT, HAS HAD THE OPPORTUNITY TO DISCUSS THE CONTENTS OF THIS AGREEMENT WITH HIS COUNSEL AND HAS DONE SO, AND THAT HE HAS ENTERED INTO THIS AGREEMENT KNOWINGLY AND VOLUNTARILY.**

WHEREFORE, the Parties hereto have executed this Agreement on the dates set forth below their respective signatures.

**NAMED PLAINTIFFS**

**DAVID ATHAN**

DocuSigned by:

*David Athan*

9B9BD49DE1D34E9

David Athan

2/4/2021

Date:_____

**JOSH FLANNERY AS PERSONAL REPRESENTATIVE OF ROBERT FLANNERY**

_____

Josh Flannery

Date:_____

**DARYL JACKSON**

_____

Daryl Jackson

Date:_____

**DENNIS SMITH**

_____

Dennis Smith

Date:_____

**COREY PARKER**

DocuSign Envelope ID: 7F78B8C3-3D55-448E-8509-8495C7DE5A4A

arbitration. *Named Plaintiffs expressly acknowledge that they are waiving their right to a trial in favor of private arbitration on the referenced claims or disputes.* The Parties agree to a private arbitrator and hereby appoint David Calzone, Esq., as the sole arbitrator. The arbitrator shall first try to informally resolve any dispute prior to invoking a formal fact-finding arbitration process, and will uphold the above terms and release of claims to the fullest extent allowed by applicable law and the terms of this Agreement, including first considering summary dismissal of the claim. This arbitration provision is subject to the Federal Arbitration Act (FAA) and governed by the Employment Rules promulgated by the American Arbitration Association. The arbitration proceeding will allow the Parties to be represented by counsel at their respective expense, reasonable discovery, a hearing on the claim, and a written award containing findings of fact and conclusions of law. With the exception of any filing fee, U.S. Steel will cover all costs of the arbitration and arbitrator's fees—subject to any subsequent award of the arbitrator. Judgment upon the award rendered by the arbitrator may be entered in any court having jurisdiction. The arbitrator may award attorney fees and costs, including reimbursement of the costs of arbitration and arbitrator's fees born by U.S. Steel, to the prevailing party in any dispute regarding alleged breach of this Agreement.

**NAMED PLAINTIFFS EACH ACKNOWLEDGE AND AGREE THAT HE HAS READ THIS AGREEMENT, HAS HAD THE OPPORTUNITY TO DISCUSS THE CONTENTS OF THIS AGREEMENT WITH HIS COUNSEL AND HAS DONE SO, AND THAT HE HAS ENTERED INTO THIS AGREEMENT KNOWINGLY AND VOLUNTARILY.**

WHEREFORE, the Parties hereto have executed this Agreement on the dates set forth below their respective signatures.

## NAMED PLAINTIFFS

**DAVID ATHAN**

**JOSH FLANNERY AS PERSONAL REPRESENTATIVE OF ROBERT FLANNERY**

David Athan

Date:_____

Josh Flannery

Date:_____

**DARYL JACKSON**

**DENNIS SMITH**

*Daryl Jackson*
—2A6E11021FC849B...
Daryl Jackson

Dennis Smith

Date: 2/4/2021

Date:_____

**COREY PARKER**

arbitration. *Named Plaintiffs expressly acknowledge that they are waiving their right to a trial in favor of private arbitration on the referenced claims or disputes.* The Parties agree to a private arbitrator and hereby appoint David Calzone, Esq., as the sole arbitrator. The arbitrator shall first try to informally resolve any dispute prior to invoking a formal fact-finding arbitration process, and will uphold the above terms and release of claims to the fullest extent allowed by applicable law and the terms of this Agreement, including first considering summary dismissal of the claim. This arbitration provision is subject to the Federal Arbitration Act (FAA) and governed by the Employment Rules promulgated by the American Arbitration Association. The arbitration proceeding will allow the Parties to be represented by counsel at their respective expense, reasonable discovery, a hearing on the claim, and a written award containing findings of fact and conclusions of law. With the exception of any filing fee, U.S. Steel will cover all costs of the arbitration and arbitrator's fees—subject to any subsequent award of the arbitrator. Judgment upon the award rendered by the arbitrator may be entered in any court having jurisdiction. The arbitrator may award attorney fees and costs, including reimbursement of the costs of arbitration and arbitrator's fees born by U.S. Steel, to the prevailing party in any dispute regarding alleged breach of this Agreement.

**NAMED PLAINTIFFS EACH ACKNOWLEDGE AND AGREE THAT HE HAS READ THIS AGREEMENT, HAS HAD THE OPPORTUNITY TO DISCUSS THE CONTENTS OF THIS AGREEMENT WITH HIS COUNSEL AND HAS DONE SO, AND THAT HE HAS ENTERED INTO THIS AGREEMENT KNOWINGLY AND VOLUNTARILY.**

WHEREFORE, the Parties hereto have executed this Agreement on the dates set forth below their respective signatures.

## NAMED PLAINTIFFS

**DAVID ATHAN**

David Athan

Date:_____

**JOSH FLANNERY AS PERSONAL REPRESENTATIVE OF ROBERT FLANNERY**

DocuSigned by:
*J othus*
*J lannery*
E0AFE67F33A349A...

Josh Flannery

2/5/2021
Date:_____

**DARYL JACKSON**

Daryl Jackson

Date:_____

**DENNIS SMITH**

Dennis Smith

Date:_____

**COREY PARKER**

arbitration. *Named Plaintiffs expressly acknowledge that they are waiving their right to a trial in favor of private arbitration on the referenced claims or disputes.* The Parties agree to a private arbitrator and hereby appoint David Calzone, Esq., as the sole arbitrator. The arbitrator shall first try to informally resolve any dispute prior to invoking a formal fact-finding arbitration process, and will uphold the above terms and release of claims to the fullest extent allowed by applicable law and the terms of this Agreement, including first considering summary dismissal of the claim. This arbitration provision is subject to the Federal Arbitration Act (FAA) and governed by the Employment Rules promulgated by the American Arbitration Association. The arbitration proceeding will allow the Parties to be represented by counsel at their respective expense, reasonable discovery, a hearing on the claim, and a written award containing findings of fact and conclusions of law. With the exception of any filing fee, U.S. Steel will cover all costs of the arbitration and arbitrator's fees—subject to any subsequent award of the arbitrator. Judgment upon the award rendered by the arbitrator may be entered in any court having jurisdiction. The arbitrator may award attorney fees and costs, including reimbursement of the costs of arbitration and arbitrator's fees born by U.S. Steel, to the prevailing party in any dispute regarding alleged breach of this Agreement.

**NAMED PLAINTIFFS EACH ACKNOWLEDGE AND AGREE THAT HE HAS READ THIS AGREEMENT, HAS HAD THE OPPORTUNITY TO DISCUSS THE CONTENTS OF THIS AGREEMENT WITH HIS COUNSEL AND HAS DONE SO, AND THAT HE HAS ENTERED INTO THIS AGREEMENT KNOWINGLY AND VOLUNTARILY.**

WHEREFORE, the Parties hereto have executed this Agreement on the dates set forth below their respective signatures.

## NAMED PLAINTIFFS

**DAVID ATHAN**

**JOSH FLANNERY AS PERSONAL REPRESENTATIVE OF ROBERT FLANNERY**

_____

David Athan

Date:_____

_____

Josh Flannery

Date:_____

**DARYL JACKSON**

**DENNIS SMITH**

_____

Daryl Jackson

Date:_____

_____

Dennis Smith

Date: 2 - 4 - 21

**COREY PARKER**

DocuSign Envelope ID: 854F2CA6-EF8A-4601-9FC9-BC4EE48BA8C5

DocuSigned by:

Corey Parker

2/4/2021       Date:_____

## **DEFENDANT**

### UNITED STATES STEEL CORPORATION

By:

Its:                                    Dated: _____

45216178.1

45793811.1

# TAB  A

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

**DAVID ATHAN,  DARYL JACKSON,
COREY PARKER AND ROBERT
FLANNERY,** on behalf of themselves
and all other persons similarly situated,              Case No. 2:17-cv-14220
known and unknown,                                             Hon. Terrence G. Berg

                         Plaintiffs,

vs.

**UNITED STATES STEEL CORP**., a
foreign profit corporation,

                         Defendant.
_____

## JOINT MOTION TO APPROVE FLSA SETTLEMENT

The Parties, jointly, by and through their respective counsel, move this Court

for entry of the Order Approving Settlement Agreement, attached hereto as ***Exhibit***

***1***, or an order materially the same as that proposed by the Parties, which: (i) grants

this motion; (ii) approves the Parties' Settlement Agreement; and (iii) dismisses this

action with prejudice and without further costs or fees to any party.  In support of

their Joint Motion, the Parties state as follows:

1.     On December 29, 2017, Plaintiffs filed their Complaint and Jury

Demand initiating this action on behalf of themselves and all other persons similarly

situated, seeking damages for alleged violations of the Fair Labor Standards Act

("FLSA") (ECF No. 1).

2.      Plaintiffs asserted four claims:

a.      Count I: Violation of the Minimum Wage Provisions of the FLSA – Timely Payment.  In this count, Plaintiffs sought liquidated damages for what they claimed were delayed payments of minimum wage when they purportedly "did not receive payment for all hours worked until subsequent pay periods" (ECF No. 1, PageID 12);

b.      Count II: Violation of the Overtime Provisions of the FLSA – Timely Payment.  In this count, Plaintiffs sought liquidated damages for what they claimed were delayed payments of overtime when they purportedly "did not receive payment for all overtime hours worked until subsequent pay periods, in violation of the overtime wage requirement provision of 29 U.S.C. § 207(a)" (ECF No. 1, PageID 15);

c.      Count III: Violation of the Minimum Wage Provisions of the FLSA – Nonpayment.  In this count, Plaintiffs sought unpaid minimum wage and liquidated damages for hours worked which they claimed were unpaid as of the filing of the complaint (ECF No. 1, PageID 17); and

d.      Count IV: Violation of the Overtime Provisions of the FLSA – Nonpayment.   In this final count, Plaintiffs sought unpaid wages and liquidated damages for overtime wages which they claimed were unpaid as of the filing of the complaint (ECF No. 1, PageID 19).

3.     Along with their Complaint, Plaintiffs also filed a Motion for Conditional Class Certification and Court Supervised Notice Pursuant to 29 U.S.C. §216(B) asking this Court to conditionally certify a group of current and former employees allowing them to proceed as an FLSA collective action (ECF No. 8).

4.     In response to Plaintiffs' Complaint, Defendant concurrently filed an Answer and a Motion to Dismiss for Failure to Exhaust Contractual Remedies and to Bring Claims Within the Six-Month Statute of Limitations for §301 of the Labor Management Relations Act (ECF Nos. 15 & 16).

5.     Plaintiffs then filed a First Amended Complaint (ECF No. 19) and Second Amended Complaint (ECF No. 38), which maintained the same four claims and theories as their original complaint.

6.     In response, Defendant filed two Renewed Motions to Dismiss (ECF Nos. 23 & 39).

7.     Meanwhile, the Parties adjourned Plaintiffs' request for conditional certification and, over the course of several months, engaged in significant pre-conditional certification discovery—including document productions, written discovery, and depositions—aimed solely at exploring the appropriateness of FLSA collective action conditional certification.

8.     Then, on February 4, 2019, the Court granted, in part, and denied, in part, Defendant's Motion to Dismiss Plaintiffs' Second Amended Complaint (ECF

No. 46).  Plaintiffs' claims for delayed payment of minimum wage (Count I) and unpaid minimum wage (Count III) were dismissed.  Plaintiffs' claims for delayed payment of overtime (Count II) and unpaid overtime (Count IV) were permitted to proceed.  *Id.*

9.    After Defendant filed an Answer to Plaintiffs' Second Amended Complaint, the Parties negotiated and submitted a Joint Stipulated Order of Conditional Certification, which was entered on March 18, 2019, conditionally certifying the following group of individuals pursuant to §216(b) of the FLSA, known as the "Conditional Collective Group:"

> All hourly employees in the Production and Maintenance Bargaining Unit at Great Lakes Works, including Zug Island and Dearborn, who during the time period February 14, 2016 through March 11, 2019 had a retro adjust inquiry or retro adjust lump sum to his or her paycheck for previously unpaid overtime as defined by the Fair Labor Standards Act.

(ECF No. 55, PageID2348).

10.    The Conditional Certification was followed by a unique Stipulated Notice Procedure (ECF No. 56) where the Parties agreed to send notice to a broader group than that which was conditionally certified by the Court, based on the "administrative burden involved in first identifying which employee's retro adjust inquiry and/or retro adjust lump sum payments reflect previously unpaid overtime as defined by the Fair Labor Standards Act."

4

11.     As part of the Notice Procedure, the Parties then met and conferred regarding the individuals who filed a Consent to Join to determine whether they met the narrower definition required to be a part of the Conditional Collective Group (ECF No. 56).

12.     At the conclusion of the 60 day Opt-In Period (ECF No. 56, PageID 2355), 228 individuals, including the Named Plaintiffs, filed Consents to Join the Conditional Collective Group and to be bound by this lawsuit's result (ECF Nos. 2 – 6, 24, 27, 44, 45, 48, 51 – 53, 57, 59 – 71, 77).

13.     The Parties next negotiated a Joint Discovery Plan to take discovery on the merits of the Plaintiffs' claims and their alleged damages (ECF No. 79), prior to any decertification or dispositive motion.  The plan was submitted to this Court on April 8, 2020.  *Id.*

14.     The Parties began merits discovery by making their initial disclosures and sending out a portion of the written discovery contemplated by the Joint Discovery Plan (ECF No. 79).

15.     Before incurring the significant costs necessary to complete merits discovery, the Parties agreed to mediate this matter with neutral third party David Calzone (Calzone Mediations LLC).

16.    In advance of the mediation, the Parties engaged in preliminary negotiations and exchanged competing methods for computing Plaintiffs' potential damages.

17.    The Parties mediated this matter on December 2, 2020.

18.    Over the course of a 12-hour mediation session, the Parties successfully negotiated a mutually agreeable arms' length resolution of the case.

19.    Thereafter, the Parties negotiated the intricacies of the settlement agreement, and are now seeking this Court's approval of their settlement and dismissal of the case with prejudice.

20.    The Parties agree that the negotiated voluntary compromise is appropriate because the Parties recognize the costs and their respective risks associated with proceeding with protracted, distracting, and expensive litigation on the various issues in contention.

21.    The significant material terms of the negotiated compromise are more fully discussed in the attached Memorandum in Support of the Parties' Joint Motion to Approve Settlement.  Additionally, due to the mutually negotiated confidentiality provision, a copy of the Parties' executed Settlement Agreement has been provided

for the Court to review *in-camera*, in case review is necessary to satisfy any additional inquiries the Court may have.[1]

22.     The Settlement Agreement provides, *inter alia*: monetary payments to the Plaintiffs representing a fair percentage of their claimed damages in light of the legal and factual issues; a proportionate service award to each of the Named Plaintiffs; reimbursement of certain litigation costs; and a reasonable attorneys' fee to Plaintiffs' Counsel.  In exchange, Plaintiffs agree to release Defendant from all wage and hour claims and dismiss this case with prejudice and without any further costs or fees.

23.     The Parties agree that the Settlement Agreement is a fair and reasonable resolution and compromise of a *bona fide* dispute over issues arising under the Plaintiffs' FLSA claims.

24.     Accordingly, the Parties jointly ask the Court to approve their Settlement Agreement in its entirety and to dismiss this case with prejudice and without any costs or fees to any party, except as provided in the Settlement Agreement.

WHEREFORE, Plaintiffs and Defendant, jointly, move this Court for entry of the Order Approving Settlement Agreement, attached hereto as ***Exhibit 1***, or an

---

[1] The Settlement Agreement will be submitted directly to chambers via secured electronic communication—per the Court's directions—clearly marked "For In Camera Review Only."

7

order materially the same as that proposed by the Parties, which: (i) grants this motion; (ii) approves the Parties' Settlement Agreement; and (iii) dismisses this action with prejudice and without further costs or fees to any party.

Respectfully submitted by the Parties:

s/ Jesse L. Young
Jesse L. Young (P72614)
KREIS ENDERLE, P.C.
P.O. Box 4010
Kalamazoo, MI 49003
T: 269-324-3000
jyoung@kehb.com

Bryan Yaldou (P70600)
THE LAW OFFICES OF
BRYAN YALDOU, PLLC
23000 Telegraph, Suite 5
Brownstown, MI 48134
T: 734-692-9200
bryan@yaldoulaw.com

*Attorneys for Plaintiff*

s/ Margaret Carroll Alli
Margaret Carroll Alli (P38281)
Lauren Zeldin (Ga. Bar No. 368999)
Joshua P. Lushnat (P75319)
OGLETREE, DEAKINS, NASH,
SMOAK & STEWART, PLLC
34977 Woodward Avenue, Suite 300
Birmingham, MI 48009
T: 248-593-6400
meg.alli@ogletree.com
lauren.zeldin@ogletree.com
joshua.lushnat@ogletree.com

*Attorneys for Defendant*

Dated: February 5, 2021

# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

**DAVID ATHAN,  DARYL JACKSON,
COREY PARKER AND ROBERT
FLANNERY,** On behalf of themselves
and all other persons similarly situated,
known and unknown,

Case No. 2:17-cv-14220
Hon. Terrence G. Berg

          Plaintiffs,

vs.

**UNITED STATES STEEL CORP**., a
foreign profit corporation,

          Defendant.

_____

# MEMORANDUM IN SUPPORT OF
## THE PARTIES' JOINT MOTION TO APPROVE SETTLEMENT

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ..................................................................... iii

STATEMENT OF THE ISSUE PRESENTED ......................................... v

MOST PERSUASIVE AUTHORITY .................................................... vi

I.   THE PARTIES' FLSA SETTLEMENT REPRESENTS A FAIR AND REASONABLE
     COMPROMISE OF BONA FIDE DISPUTES ................................................ 1

     1.  The Absence Of Fraud Or Collusion In The Settlement ............................. 4

     2.  Complexity, Expense, And Likely Duration Of The Litigation ................... 5

     3.  Amount Of Discovery Engaged In By The Parties.................................... 7

     4.  The Likelihood Of Success On The Merits .................................................. 8

     5.  Opinions Of Class Counsel And Representatives........................................ 9

     6.  The Reaction Of Absent Class Members.................................................... 10

     7.  The Public Interest ...................................................................................... 10

II.  PLAINTIFFS' COUNSEL IS ENTITLED TO THEIR NEGOTIATED ATTORNEYS' FEES
     AND COSTS ....................................................................................................... 14

III. CONCLUSION ....................................................................................................... 17

## <u>TABLE OF AUTHORITIES</u>

*Andriello v. CFI Sales & Marketing, Inc.*,
    2012 WL 3264920 (M.D. Fla., Jan. 4, 2012) .......................................................5

*Arrington v. Mich. Bell Tel. Co.*,
    2012 U.S. Dist. LEXIS 157362 (E.D. Mich., Nov. 2, 2012)...............................3

*Barbee v. Big River Steel, LLC*,
    2019 U.S. App. LEXIS 18527 (8th Cir. June 20, 2019)....................................15

*Belmont v. Homes of Opportunity, Inc.*,
    2018 U.S. Dist. LEXIS 209920 (E.D. Mich. Dec. 13, 2018) ...........................13

*Blum v. Stenson*,
    465 U.S. 886 (1984).........................................................................................14

*Bradford v. Legacy Health Services*,
    2014 WL 7185453 (N.D. Ohio, Dec. 16, 2014) ................................................11

*Cox v. Brookshire Grocery Co.*,
    919 F.2d 354 (5th Cir. 1990) ...........................................................................13

*Cruthis v. Vision's*,
    2014 WL 4092325 (E.D. Ark., Aug. 19, 2014)............................................vi, 11

*Dillworth v. Case Farms Processing, Inc.*,
    2010 WL 776933 (N.D. Ohio, March 8, 2010) .......................................4, 11, 13

*Does 1-2 v. Déjà Vu Services, Inc.*,
    925 F.3d 886 (6th Cir. 2019) .............................................................................3

*Fegley v. Higgins*,
    19 F.3d 1126 (6th Cir. 1994) .......................................................................13, 14

*Gentrup v. Renovo Services, LLC*,
    2011 WL 2532922 (S.D. Ohio, June 24, 2011)................................................11

*Granada Invs., Inc. v. DWG Corp.*,
    962 F.2d 1203 (6th Cir. 1992) ...........................................................................3

*Griffin v. Lady Jane's Haircuts for Men Holding Company, LLC*,
    2019 WL 2135648 (E.D. Mich., May 15, 2019) ..........................................vi, 11

*Hadix v. Johnson*,
   322 F.3d 895 (6th Cir. 2003) ...............................................................13

*Hensley v. Eckerhart*,
   461 U.S. 424 (1983)...........................................................................14

*Hill v. Medicare Transport, Inc.*,
   2019 WL 5425167 (N.D. Ohio, Oct. 22, 2019).............................................vi, 11

*Int'l Union, United Auto., Aerospace and Agr. Implement Workers of
   Am. v. General Motors Corp.*,
   497 F.3d 615 (6th Cir. 2007) ...............................................................3

*King v. Wells Fargo Home Mortg.*,
   2009 WL 2370640 (M.D. Fla., July 30, 2009) .............................................vi, 12

*Lakosky v. Discount Tire Co., Inc.*,
   2015 WL 4617186 (E.D. Mich., July 31, 2015)................................... vi, 1, 3, 11

*Local 56, United Food & Commercial Workers Union v. Campbell
   Soup Co.*,
   954 F. Supp. 1000 (D.N.J. 1997) ........................................................14

*Massey v. Tobler Construction, Inc.*,
   2013 WL 12167535 (M.D. Fla., Mar. 29, 2013) ..............................................11

*Moore v. South Florida Restoration, Inc.*,
   2018 WL 6620872 (S.D. Fla., Nov. 16, 2018) ................................................11

*Pittman v. Matalco (U.S.), Inc.*,
   2018 WL 6567801 (N.D. Ohio, Dec. 13, 2018) .............................. vi, 11, 12, 13

*Smolinski v. Ruben & Michelle Enterprises, Inc.*,
   2017 WL 835592 (E.D. Mich., March 3, 2017) ...............................................12

*U.S. v. Rosenwasser*,
   323 U.S. 360 (1945).............................................................................10

**Statutes**

29 U.S.C. § 216 ...............................................................................14, 15

## <u>STATEMENT OF THE ISSUE PRESENTED</u>

Should the Court approve the Parties' Fair Labor Standards Act settlement where the Parties' negotiated an arms' length resolution through an extensive mediation with a third-party mediator, the terms of the Parties' settlement are fair and reasonable, and the Parties' jointly request that the Court approve the settlement?

Plaintiffs Answer:          Yes.

Defendant Answers:          Yes.

## <u>MOST PERSUASIVE AUTHORITY</u>

*Cruthis v. Vision's*, 2014 WL 4092325 (E.D. Ark., Aug. 19, 2014)

*Griffin v. Lady Jane's Haircuts for Men Holding Company, LLC,* 2019 WL 2135648 (E.D. Mich., May 15, 2019)

*Hill v. Medicare Transport, Inc.*, 2019 WL 5425167 (N.D. Ohio, Oct. 22, 2019)

*King v. Wells Fargo Home Mortg.*, 2009 WL 2370640 (M.D. Fla., July 30, 2009)

*Lakosky v. Discount Tire Co., Inc.*, 2015 WL 4617186 (E.D. Mich., July 31, 2015)

*Pittman v. Matalco (U.S.), Inc.*, 2018 WL 6567801 (N.D. Ohio, Dec. 13, 2018)

I.   **THE PARTIES' FLSA SETTLEMENT REPRESENTS A FAIR AND REASONABLE COMPROMISE OF BONA FIDE DISPUTES**

As a general rule, "employees' claims under the FLSA are non-waivable and may not be settled without supervision of…a district court." *Lakosky v. Discount Tire Co., Inc.*, 2015 WL 4617186 (E.D. Mich., July 31, 2015). "Before this Court can approve the settlement of Plaintiff's FLSA claim, the Court must determine that the parties were engaged in a *bona fide* dispute and that the settlement is a fair and reasonable compromise of the issues presented." *Id.*

In this matter, the Parties are resolving a *bona fide* dispute as to both the factual and legal underpinnings of Plaintiffs' claims.  Plaintiffs' claims are for (1) allegedly unpaid overtime and (2) overtime that was allegedly paid late—that is, in a pay period subsequent to the pay period for the workweek in which the overtime hours were worked (ECF No. 46).

After discovery (discussed more fully below), the Parties agree that there is no evidence of any currently unpaid overtime wages.  Plaintiffs previously received all of their overtime wages and the disputed legal issues relate only to the timeliness of those overtime payments.

As to Plaintiffs' allegations of delayed overtime, because the Parties have agreed to resolve the dispute through compromise, the following legal issues will not be litigated to conclusion: (a) whether a statutory claim for delayed overtime exists under the FLSA; (b) if so, whether Plaintiffs' receipt of retroactive overtime

1

payments satisfies the FLSA; (c) whether liquidated damages are appropriate; and (d) whether collective action treatment is appropriate.[2]

It is Defendant's position that the FLSA does not provide a cause of action for alleged delayed payment of overtime under these circumstances. Moreover, even if the FLSA does provide such a cause of action, the "delayed" payments Plaintiffs are complaining about were made in compliance with the FLSA and there is no violation. Defendant further avers that its actions were taken in good faith upon a reasonable belief that it was complying with the FLSA, thereby making liquidated damages inappropriate. Defendant also disputes that collective action treatment is appropriate under the circumstances since each allegedly delayed payment of overtime needs to be analyzed individually because there is no common plan or scheme that results in an alleged FLSA violation.

Plaintiffs contend that delayed payments of overtime violate the FLSA and that collective action treatment is appropriate. Plaintiffs dispute that Defendant's payroll correction process satisfied Defendant's statutory obligation under the FLSA, and allege that Defendant was required and able to fully compute Plaintiffs'

---

[2] Two potential (and disputed) appellate issues are: (1) whether or not the specific claims in this case are subject to the Parties' collective bargaining agreement and the limitations of Section 301 of the Labor Management Relations Act; and (2) whether "gap time" is owed under the FLSA in weeks in which employees actually work more than 40 hours per week. This Court has already ruled that the answer to both of these questions is "no." (ECF No. 46). Nonetheless, Plaintiffs' claims are being resolved through compromise as part of the Parties' Settlement Agreement.

overtime compensation at the close of every pay period. Plaintiffs also contend that liquidated damages are appropriate.

Instead of adjudicating these legal issues to a final conclusion through expensive, complex, and time-consuming litigation, the Parties have resolved the issues through a mutually-acceptable compromise that is fair and reasonable.

To determine whether a proposed FLSA settlement is fair and reasonable, courts consider, where applicable: (1) the risk of fraud or collusion; (2) the complexity, expense, and likely duration of the litigation; (3) the amount of discovery completed; (4) the likelihood of success on the merits; (5) the opinion of class counsel and representatives; (6) the reaction of absent class members; and (7) public interest in the settlement. *Lakosky, supra; Does 1-2 v. Déjà Vu Services, Inc.*, 925 F.3d 886 (6th Cir. 2019), citing *Int'l Union, United Auto., Aerospace and Agr. Implement Workers of Am. v. General Motors Corp.*, 497 F.3d 615, 631 (6th Cir. 2007)); *Granada Invs., Inc. v. DWG Corp.,* 962 F.2d 1203, 1205 (6th Cir. 1992)). This list is not exhaustive and courts do not necessarily apply all of the factors. Rather, the factors are guideposts used to determine the fairness of a proposed settlement.  "A court applying these factors must do so in the context of the actual settlement."  *Arrington v. Mich. Bell Tel. Co.,* 2012 U.S. Dist. LEXIS 157362, *3 (E.D. Mich., Nov. 2, 2012). Analysis of these factors, under the circumstances, indicate that this settlement is both fair and reasonable.

1.     <u>**The Absence Of Fraud Or Collusion In The Settlement**</u>

There was no fraud or collusion in the Parties' settlement. The Parties reached an arms' length settlement of a *bona fide* dispute over the course of a 12-hour mediation with an experienced, independent, and highly respected third-party mediator (David Calzone).  Throughout the process, the Parties debated the merits and realities of the claims, defenses, and adjudicatory process.  Both sides' best interests were zealously represented by experienced and prepared counsel of their choosing.

As discussed, Plaintiffs' alleged damages in this matter consist entirely of liquidated damages to which they claim they are entitled due to occasionally delayed payments of overtime, which Defendant disputes. The Settlement Agreement provides Plaintiffs with a fair portion of their disputed liquidated damages and attorneys' fees, and all of their costs.

As one court noted, the average recovery in class actions is seven (7%) to eleven (11%) percent of claimed damages.  *Dillworth v. Case Farms Processing, Inc.*, 2010 WL 776933 (N.D. Ohio, March 8, 2010) (discussing average class results while approving an FLSA settlement of one-third of claimed damages). In *Dillworth*, the court approved the fairness of the parties' confidential settlement, calling it "exceptional" because it exceeded that average.  Here, the recovery to Plaintiffs similarly exceeds the above average and, for the reasons articulated in *Dillworth*,

warrants approval.  The recovery to Plaintiffs in this settlement also exceeds the 3%

recovery approved by other courts in FLSA cases.  *See*, e.g., *Andriello v. CFI Sales*

*& Marketing, Inc.*, 2012 WL 3264920 (M.D. Fla., Jan. 4, 2012) (approval of a

settlement resulting in a 3% recovery of claimed damages).

The Parties' settlement also provides each Named Plaintiff with an additional

flat fee, Service Award commensurate with their individual payments, in recognition

of their active participation in the lawsuit.  As the Court can see, the Service Awards

are not indicative of any collusion or fraud given their relatively low amount.

The Parties' settlement eliminates the risks and costs both sides would bear if

this litigation continued to decertification of the collective (potentially resulting in

multiple individual actions) and/or complete adjudication on the merits through trial,

final judgment, and potential appeals.  In agreeing upon the proposed settlement, the

Parties had sufficient information and conducted an adequate investigation to allow

them to make an educated and informed analysis and conclusion as to the strengths

and weaknesses of Plaintiffs' claims in comparison to their respective costs and the

risks associated with further drawn-out litigation.  The Parties agree, for their own

independent reasons, that settlement was appropriate.

## 2.    Complexity, Expense, And Likely Duration Of The Litigation

The complexity, expense, and length of continued litigation militate in favor

of this settlement.  Plaintiffs' claims are complex in theory and factually nuanced.

5

For example, ultimately determining whether any retroactive payroll payment received by any Plaintiff is an actual violation of the FLSA would require a detailed analysis of the statutory and case law, the specific payment's circumstances, the specific way in which Defendant received notice of the need to make such payment, and the timeliness in processing the payment. The complexity of the legal issues and facts in this case cannot be overstated. The legal viability of the claims is disputed by the Parties. The case itself involves a 24-hour manufacturing operation, 228 Opt-Ins across multiple shifts and locations, a one-of-a-kind payroll system, tens of payroll-approving managers, and a workforce that is permitted under the relevant collective bargaining agreement to switch and trade shifts with coworkers.

Avoiding the significant expense and time of continuing litigation of these complex claims and proofs is in the Parties' best interests. Should this matter continue, the Parties would need to complete significant discovery consisting of dozens of depositions and voluminous written discovery and document production. They would then need to brief and argue the competing sides of a decertification motion and then a motion for summary judgment. Based on the resultant rulings, if necessary, the Parties would then have to prepare for and put on a complex and lengthy jury trial. This case would surely proceed for many more months.

If Plaintiffs ultimately prevailed at trial by proving that the FLSA was violated by any of the supposedly delayed payments of overtime, Defendant would be faced

with the prospect of a verdict against it and the obligation to pay Plaintiffs' full attorneys' fees and costs.  If Defendant ultimately prevailed, Plaintiffs would face dismissal of their claims and no recovery of liquidated damages, attorneys' fees, or costs.  The Parties compromised to avoid either extreme outcome.  This settlement is a reasonable means for the Parties to minimize or altogether avoid future time expended, risks, and litigation costs.

### 3.   Amount Of Discovery Engaged In By The Parties

The Parties engaged in extensive pre-certification discovery in this matter— providing them a well-informed basis to evaluate their respective claims and defenses before deciding to compromise on resolution of this matter.  The Named Plaintiffs (David Athan, Corey Parker, Robert Flannery, Daryl Jackson, and Dennis Smith) were all deposed regarding the issues related to conditional certification as a collective action.  Plaintiffs deposed two corporate representatives for Defendant regarding the same issues.  Each party responded to written interrogatories and requests for the production of documents.  Defendant alone produced over 8,800 documents, through pre-certification discovery and the post-certification meet-and-confer process. The meet-and-confer process provided the Parties an in-depth analysis of each Opt-In's maximum amount of liquidated damages that could be claimed—subject to acknowledged data limitations.

The Parties reviewed all of the exchanged and available information and used it to evaluate the merits of their respective claims or defenses in comparison to the costs and risks associated with further litigation. Based upon the written discovery and meet and confer process, the Parties collaborated on a detailed liquidated damages estimate that served as the basis for settlement negotiations. The Parties' settlement is based on that estimate, adjusted for the purposes of compromise in light of the risks and costs associated with proceeding.

**4.    The Likelihood Of Success On The Merits**

The likelihood of Plaintiffs' success on the merits, and the amount they would be awarded, is uncertain, further suggesting that this settlement is fair and appropriate. Plaintiff asserts, and Defendant denies, that they are each entitled to liquidated damages in an amount equal to their personal retroactive overtime payments going back to February 14, 2016. However, this is a fact-intensive inquiry that is premised on the FLSA actually recognizing a claim for the delayed payment of overtime. Assuming *arguendo* that the FLSA recognizes such a claim, an analysis as to whether each specific retroactive payment, under its particular circumstances, violates the FLSA would then be necessary. The detailed analysis would likely come down to a judgment of what was practicable under the specific circumstances of each payment. This analysis would hinge on witness credibility related to why each

payment was necessary and how and when the necessity for each payment came to Defendant's attention.

Additionally, Plaintiffs allege that the delay of various overtime payments is the result of a common plan or scheme and that each Plaintiff was similarly situated with respect to the administration of that scheme.  This is a material issue which also remains in dispute and which would have been challenged through a motion to decertify the collective action, prior to dispositive motions, if compromise was not reached.  If decertification was granted, Defendant then faced the possibility of defending 228 individual lawsuits.

Nonetheless, if Plaintiffs succeeded on the merits, which would require substantial additional time and resources, the Parties agree that the specific amount of any recovery is uncertain.  Defendant continues to deny any and all liability or wrongdoing with respect to Plaintiffs' allegations and theory of liability.  Thus, this proposed settlement is a fair and reasonable settlement in relation to the potential risks and uncertain recovery in this case.

### 5. <u>Opinions Of Class Counsel And Representatives</u>

Plaintiffs' Counsel is of the opinion that the Settlement Agreement contains a fair and reasonable compromise of the disputed issues for all the reasons stated in this Joint Motion and the attached attorney Declarations.  Moreover, the Class

Representatives, David Athan, Corey Parker, Robert Flannery,[3] Daryl Jackson, and Dennis Smith, believe that the Settlement Agreement contains a fair and reasonable compromise of the disputed issues and provides for recovery prior to a long, drawn out adjudication of this case's merits.

### 6.     The Reaction Of Absent Class Members

Because this is an opt-in FLSA collective action, there are no absent class members.  The Opt-In Plaintiffs in this case have agreed to be bound by any outcome in this lawsuit whether favorable or unfavorable.

### 7.     The Public Interest

The public interest is served by the proposed settlement as it implicitly serves the purpose and intent of Congress in enacting the FLSA—"to raise substandard wages and to give additional compensation for overtime work … thereby helping to protect this nation 'from the evils and dangers resulting from wages too low to buy the bare necessities of life and from long hours of work injurious to health.'" *U.S. v. Rosenwasser*, 323 U.S. 360, 361 (1945) (*quoting* Sen. Rep. No. 884 (75th Conf., 1st Sess.)).  While Plaintiffs earn well above a substandard wage, the Parties recognize that the timing of certain retroactive overtime payments was disputed in this case, and Congressional intent has been achieved where Plaintiffs were able to pursue

---

[3] The estate of whom is acting through personal representative Josh Flannery.  See ECF No. 76.

their claims with competent and experienced counsel. The Parties agree that the Plaintiffs have already received all of their overtime wages, and only liquidated damages remained in issue.

The public's interest has been satisfied by the Settlement Agreement despite it not being publicly filed.[4] Where confidentiality is important to the parties, Courts are permitted to evaluate the fairness and reasonableness of the Parties' settlement without requiring the settlement agreement to be publicly filed. *See,* e.g., *Lakosky v. Discount Tire Co., Inc.*, 2015 WL 4617186 (E.D. Mich., July 31, 2015); *Griffin v. Lady Jane's Haircuts for Men Holding Company, LLC,* 2019 WL 2135648 (E.D. Mich., May 15, 2019); *Dillworth v. Case Farms Processing, Inc.*, 2010 WL 776933 (N.D. Ohio, Mar. 8, 2010); *Pittman v. Matalco (U.S.), Inc.*, 2018 WL 6567801 (N.D. Ohio, Dec. 13, 2018); *Bradford v. Legacy Health Services,* 2014 WL 7185453 (N.D. Ohio, Dec. 16, 2014); *Hill v. Medicare Transport, Inc.*, 2019 WL 5425167 (N.D. Ohio, Oct. 22, 2019); *Gentrup v. Renovo Services, LLC*, 2011 WL 2532922 (S.D. Ohio, June 24, 2011); *Cruthis v. Vision's*, 2014 WL 4092325 (E.D. Ark., Aug. 19, 2014); *Moore v. South Florida Restoration, Inc.*, 2018 WL 6620872 (S.D. Fla., Nov. 16, 2018); *Massey v. Tobler Construction, Inc.*, 2013 WL 12167535 (M.D. Fla., Mar.

---

[4] If the Court prefers, the parties are willing to submit the settlement agreement with only the dollar amounts of the various payments redacted.

29, 2013); *King v. Wells Fargo Home Mortg.*, 2009 WL 2370640 (M.D. Fla., July 30, 2009).[5]

The Parties' are not concealing the existence of a settlement from the public, or even the material terms of the settlement.  Indeed, this motion is being filed publicly and discloses all significant material terms of the Settlement Agreement, except for the specific payment amounts.  As the *Pittman* court noted, since there are multiple issues in dispute that are being resolved in the Parties' settlement, the public would "stand to learn little about the value of any given FLSA dispute by viewing the terms of the settlement agreement."  *Pittman,* at *2.  The same holds true here where the only terms not being disclosed are the actual dollar amounts of the payments.  This Motion provides the public sufficient information to evaluate the fairness of the Parties' compromise without seeing the agreement itself.

---

[5] Candidly, courts in this district and elsewhere have also refused to review settlement agreements confidentially.  See, for example, *Smolinski v. Ruben & Michelle Enterprises, Inc.*, 2017 WL 835592 (E.D. Mich., March 3, 2017).  Those cases, however, are distinguishable.  In *Smolinski*¸ and similar cases, the parties attempted to shield the entire agreement and all of its terms from the public.  Here, that is not the case.  The material terms of the Parties' settlement agreement are being fully disclosed through this motion, including the relative reasonableness of the amounts being paid.  The only terms not being disclosed are the actual dollar amounts of the payments.  The parties are unaware of any case specifically holding that in the presence of such broad disclosure, the parties still must publicly disclose the actual dollar amounts being paid. Doing so under the circumstances would add little.  *Pittman, supra.*

Plaintiffs are receiving a fair percentage of their claimed damages in light of the legal and factual issues presented. The Named Plaintiffs will receive a reasonable Service Award that nonetheless falls far short of any windfall that could possibly suggest collusion.  Service "awards are efficacious ways of encouraging members of a class to become class representatives and rewarding individual efforts taken on behalf of the class." *Hadix v. Johnson*, 322 F.3d 895, 897 (6th Cir. 2003) (reviewing such awards under an abuse of discretion standard). Notably, "courts routinely approve incentive awards to compensate named plaintiffs for the services they provided and the risks they incurred during the course of the class action litigation." *Dillworth, supra; Belmont v. Homes of Opportunity, Inc.*, 2018 U.S. Dist. LEXIS 209920, \*5 (E.D. Mich. Dec. 13, 2018).

The Settlement Agreement provides that all of Plaintiffs costs are reimbursed and the negotiated attorneys' fees represent less than the actual lodestar incurred by the Plaintiffs.  The amount of attorneys' fees as compared to the Plaintiffs' recovery is "neither uncommon nor unreasonable," and is significantly less than other approved settlements.  *Pittman, supra; See also*, *Fegley v. Higgins*, 19 F.3d 1126 (6th Cir. 1994) (upholding attorneys' fees of $40,000 which were 520% of the Plaintiff's recovery); *Cox v. Brookshire Grocery Co.*, 919 F.2d 354 (5th Cir. 1990) (affirming attorneys' fees in an amount 545% of the Plaintiff's recovery).

13

In exchange for these payments, Plaintiffs are dismissing this case with prejudice and without any further costs or fees to any party. They are also providing a limited release to Defendant, and the other released parties, covering any and all wage-and-hour claims only, and agreeing to arbitrate any action to enforce the settlement agreement. Of course, no Plaintiff has waived any claim that cannot be waived under the law. The public can clearly see that this is a fair and reasonable settlement in light of the risks presented by continued adjudication.

## II. PLAINTIFFS' COUNSEL IS ENTITLED TO THEIR NEGOTIATED ATTORNEYS' FEES AND COSTS

Section 216(b) of the FLSA provides that "[t]he court in such action shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and costs of the action." 29 U.S.C. § 216(b). An award of attorneys' fees to a prevailing plaintiff under § 216(b) of the FLSA is mandatory, but the amount of the award is within the discretion of the judge. *Fegley v. Higgins*, 19 F.3d 1126, 1134 (6th Cir. 1994).

A negotiated fee is preferred because it prevents attorneys' fees from becoming "a second major litigation." *Hensley v. Eckerhart*, 461 U.S. 424 at 437 (1983) ("Ideally, of course, litigants will settle the amount of a fee."). Courts therefore have "a responsibility to encourage agreement" on fees where possible. *Blum v. Stenson*, 465 U.S. 886, 902 n.19 (1984); *see also Local 56, United Food & Commercial Workers Union v. Campbell Soup Co.*, 954 F. Supp. 1000, 1005 (D.N.J.

14

1997) (granting counsel the maximum amount of fees agreed to by the defendant under the settlement agreement where "class members ... retain all that the settlement provides [and] they do not lose any of the negotiated benefits on account of an attorneys' fee and costs award that equals the 'cap' on such an award set forth in the settlement").

Indeed, although not binding here, the Eighth Circuit recently held that court approval of negotiated attorneys' fees and costs is not necessary. *Barbee v. Big River Steel, LLC*, 2019 U.S. App. LEXIS 18527, *4 (8th Cir. June 20, 2019) ("any authority for judicial approval of FLSA settlements in 29 U.S.C. § 216 does not extend to review of settled attorney fees . . .[w]hen the parties negotiate the reasonable fee amount separately and without regard to the plaintiff's FLSA claim, the amount the employer pays to the employees' counsel has no bearing on whether the employer has adequately paid its employees in a settlement."). Nonetheless, the Court should still approve the fees agreed to by the Parties in the Settlement Agreement.

Plaintiffs' Counsel's attorneys' fees and costs are reasonable given the unique legal theories presented in the case and the amount of resources expended to investigate, research, analyze, and prepare Plaintiffs' claims for litigation. Specifically, Plaintiffs' Counsel spent a significant amount of time: investigating the potential claims; drafting pleadings and motion responses; engaging in written

discovery; preparing for and defending depositions; taking Rule 30(b)(6) depositions; analyzing each Plaintiff's pay records; meeting and conferring with Defendant's counsel for purposes of identifying the Conditional Collective Group from the Potentially Eligible Opt-Ins that filed a Consent to Join; otherwise corresponding with Defendant's counsel; managing communications with Opt-In Plaintiffs; reviewing documents related to Plaintiffs' theory of delayed overtime; evaluating various damage models; negotiating the Settlement Agreement; and filing this Motion.  These activities are necessarily time consuming.

Plaintiffs submit that the attorneys' fees and costs contained in the settlement agreement are more than reasonable and should be approved as a part of the settlement in this matter.  The fees are all the more reasonable given that they are less than the value of the time actually spent on this matter by Plaintiffs' Counsel. That is, the negotiated fees represent a discount or negative lodestar. Plaintiffs' Counsel has submitted Declarations in support of their negotiated attorneys' fees and costs. (***Exhibit 2***, Young Declaration; ***Exhibit 3***, Yaldou Declaration).

Defendant takes no position on Plaintiffs' request for the attorneys' fees and costs provided in the Settlement Agreement—per the agreement's terms.  Defendant only indicates that the amount of costs and fees were vigorously negotiated as part of the Parties' strenuous mediation.

16

### III.   CONCLUSION

Plaintiffs and Defendant agree that the Parties' settlement is a fair and reasonable resolution of a *bona fide* dispute over FLSA issues.  As such, the Parties jointly request that this Court enter the Order Approving Settlement Agreement, which is attached hereto as ***Exhibit 1***, or an order materially the same as that proposed by the Parties, which: (i) grants this motion; (ii) approves the Parties' settlement agreement; and (iii) dismisses this action with prejudice and without further costs or fees to any party.

Dated:  February 5, 2021                     Respectfully submitted by:


s/ Jesse L. Young                                s/ Margaret Carroll Alli
Jesse L. Young (P72614)                    Margaret Carroll Alli (P38281)
KREIS ENDERLE, P.C.                       Lauren Zeldin (Ga. Bar No. 368999)
P.O. Box 4010                                   Joshua P. Lushnat (P75319)
Kalamazoo, MI  49003                       OGLETREE, DEAKINS, NASH,
T: 269-324-3000                                SMOAK & STEWART, PLLC
jyoung@kehb.com                             34977 Woodward Avenue, Suite 300
                                                      Birmingham, MI 48009
Bryan Yaldou (P70600)                      T: 248-593-6400
THE LAW OFFICES OF BRYAN           meg.alli@ogletree.com
YALDOU, PLLC                                lauren.zeldin@ogletree.com
23000 Telegraph, Suite 5                     joshua.lushnat@ogletree.com
Brownstown, MI 48134
T: 734-692-9200                                *Attorneys for Defendant*
bryan@yaldoulaw.com


*Attorneys for Plaintiff*

45918358.1

17

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

**DAVID ATHAN,  DARYL JACKSON,**
**COREY PARKER AND ROBERT**
**FLANNERY,** on behalf of themselves
and all other persons similarly situated,               Case No. 2:17-cv-14220
known and unknown,                                       Hon. Terrence G. Berg

           Plaintiffs,

vs.

**UNITED STATES STEEL CORP**., a
foreign profit corporation,

           Defendant.

_____

## INDEX OF EXHIBITS

1      Stipulated Order Approving Settlement

2      Declaration of Jesse L. Young

3      Declaration of Bryan Yaldou

45929346.1

# EXHIBIT 1

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

**DAVID ATHAN,  DARYL JACKSON,
COREY PARKER AND ROBERT
FLANNERY,** On behalf of themselves
and all other persons similarly situated,                   Case No. 2:17-cv-14220
known and unknown,                                                    Hon. Judge Terrence G. Berg
                                          Plaintiffs,

vs.

**UNITED STATES STEEL CORP**., a
foreign profit corporation
                                          Defendant.
_____

## ORDER APPROVING SETTLEMENT

The Parties, through their Joint Motion to Approve Settlement, have sought

this Court's approval of their settlement of the Plaintiffs' Fair Labor Standards Act

("FLSA") claims and an order dismissing the case with prejudice and without any

further costs or fees to any party beyond what is provided in the Parties' Settlement

Agreement.  For the reasons set forth below, the Parties' Motion is GRANTED.

On December 29, 2017, Plaintiffs filed their Complaint and Jury Demand

initiating this action on behalf of themselves and all other persons similarly situated,

seeking damages for alleged violations of the Fair Labor Standards Act ("FLSA")

(ECF No. 1).  Plaintiffs asserted four claims:

Count I: Violation of the Minimum Wage Provisions of the FLSA –
Timely Payment.  In this count, Plaintiffs sought liquidated damages
for what they claimed were delayed payments of minimum wage when

1

they purportedly "did not receive payment for all hours worked until subsequent pay periods" (ECF No. 1, PageID 12);

Count II: Violation of the Overtime Provisions of the FLSA – Timely Payment. In this count, Plaintiffs sought liquidated damages for what they claimed were delayed payments of overtime when they purportedly "did not receive payment for all overtime hours worked until subsequent pay periods, in violation of the overtime wage requirement provision of 29 U.S.C. § 207(a)" (ECF No. 1, PageID 15);

Count III: Violation of the Minimum Wage Provisions of the FLSA – Nonpayment. In this count, Plaintiffs sought unpaid minimum wage and liquidated damages for hours worked which they claimed were unpaid as of the filing of the complaint (ECF No. 1, PageID 17); and

Count IV: Violation of the Overtime Provisions of the FLSA – Nonpayment. In this final count, Plaintiffs sought unpaid wages and liquidated damages for overtime wages which they claimed were unpaid as of the filing of the complaint (ECF No. 1, PageID 19).

On February 4, 2019, as a result of Defendant's Motion to Dismiss Plaintiffs' Second Amended Complaint, Plaintiffs' claims for delayed payment of minimum wage (Count I) and unpaid minimum wage (Count III) were dismissed (ECF No. 46). Plaintiffs' claims for delayed payment of overtime (Count II) and unpaid overtime (Count IV) were permitted to proceed. *Id.*

The Parties engaged in significant pre-conditional certification discovery— including document productions, written discovery, and depositions—aimed solely at the appropriateness of FLSA collective action conditional certification. Eventually, and based on that discovery, the Parties negotiated and submitted a Joint Stipulated Order of Conditional Certification, which was entered on March 18, 2019,

2

conditionally certifying the following group of individuals pursuant to §216(b) of

the FLSA, known as the "Conditional Collective Group:"

> All hourly employees in the Production and Maintenance Bargaining
> Unit at Great Lakes Works, including Zug Island and Dearborn, who
> during the time period February 14, 2016 through March 11, 2019 had
> a retro adjust inquiry or retro adjust lump sum to his or her paycheck
> for previously unpaid overtime as defined by the Fair Labor Standards
> Act.

(ECF No. 55, PageID2348).

Through the notice procedure, 228 Plaintiffs opted into this lawsuit.  The

Parties then examined the payments received by each Plaintiff through a negotiated

meet-and-confer process.  Before embarking on further significant merits discovery

on the entire group of opt-ins, the Parties agreed to attend mediation.

In advance of the mediation, the Parties engaged in preliminary negotiations

and exchanged competing methods for computing Plaintiffs' potential damages.

Thereafter, the Parties' utilized an independent, experienced third party mediator to

resolve this matter.  The Parties' compromise has been memorialized in their

confidential Release and Settlement Agreement (the "Settlement Agreement").

The Settlement Agreement provides, *inter alia*: monetary payments to the

Plaintiffs representing a fair percentage of their claimed damages in light of the legal

and factual issues; a proportionate service award to each of the Named Plaintiffs;

reimbursement of certain litigation costs; and a reasonable attorneys' fee to

Plaintiffs' Counsel.  In exchange, Plaintiffs agree to release Defendant from all wage and hour claims and dismiss this case with prejudice.

The Parties agree that the negotiated voluntary compromise is appropriate because the Parties recognize the costs and their respective risks associated with proceeding with protracted, distracting, and expensive litigation on the various issues in contention.  The Parties have also agreed to keep the specific amounts of the settlement components confidential.  Based on the Court's *in-camera* review of the Parties' Settlement Agreement, the Court agrees with the Parties and finds that the Parties' settlement is fair and reasonable.  The Parties' settlement is approved and their Motion is granted.

## I.   THE PARTIES' FLSA SETTLEMENT REPRESENTS A FAIR AND REASONABLE COMPROMISE OF BONA FIDE DISPUTES

As a general rule, "court approval is required for the settlement of claims for back wages or liquidated damages under the FLSA."  *Arrington v. Mich. Bell Tel. Co.*, 2012 U.S. Dist. LEXIS 157362, *1 (E.D. Mich. Nov. 2, 2012) (*citing Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1354 (11th Cir. 1982).  "Before this Court can approve the settlement of Plaintiff's FLSA claim, the Court must determine that the parties were engaged in a *bona fide* dispute and that the settlement is a fair and reasonable compromise of the issues presented."  *Lakosky v. Discount Tire Co., Inc.*, 2015 WL 4617186 (E.D. Mich., July 31, 2015).

4

In this matter, the Parties are resolving a *bona fide* dispute as to both the factual and legal underpinnings of Plaintiffs' claims. Plaintiffs' remaining claims are for: (1) allegedly unpaid overtime; and (2) overtime that was allegedly paid late—that is, in a pay period subsequent to the pay period for the workweek in which the overtime hours were worked (ECF No. 46).

After significant discovery, the Parties agree that there is no evidence of any currently unpaid overtime wages (Count IV). Plaintiffs have received all of their overtime wages and the disputed legal issues relate only to the timeliness of those previously received overtime payments.

As to Plaintiffs' allegation of delayed overtime (Count II), because the parties have agreed to resolve the dispute through compromise, the following legal issues will not be litigated to conclusion: (a) whether a statutory claim for delayed overtime exists under the FLSA; (b) if so, whether Plaintiffs' receipt of retroactive overtime payments satisfies the FLSA; (c) whether liquidated damages are appropriate; and (d) whether collective action treatment is appropriate.

Instead of adjudicating these legal issues to a final conclusion through expensive, complex, and time-consuming litigation, the Parties have resolved the issues through a mutually-acceptable compromise that is fair and reasonable. Based on the foregoing, the Court finds that the parties are resolving a *bona fide* dispute and compromising on the issues presented.

Next, to determine whether a proposed FLSA settlement is fair and reasonable, courts consider, where applicable: (1) the risk of fraud or collusion; (2) the complexity, expense, and likely duration of the litigation; (3) the amount of discovery completed; (4) the likelihood of success on the merits; (5) the opinion of class counsel and representatives; (6) the reaction of absent class members; and (7) public interest in the settlement. *Arrington, supra; Lakosky, supra; Does 1-2 v. Déjà Vu Services, Inc.*, 925 F.3d 886 (6th Cir. 2019), citing *Int'l Union, United Auto., Aerospace and Agr. Implement Workers of Am. v. General Motors Corp.*, 497 F.3d 615, 631 (6th Cir. 2007)); *Granada Invs., Inc. v. DWG Corp.,* 962 F.2d 1203, 1205 (6th Cir. 1992)).  Analysis of these factors, under the circumstances, indicate that this settlement is both fair and reasonable.

### 1.    THE ABSENCE OF FRAUD OR COLLUSION IN THE SETTLEMENT

There is no evidence of fraud or collusion in the Parties' settlement. The Parties reached an arms' length settlement over the course of a 12-hour mediation with an experienced, independent, and highly respected third-party mediator (David Calzone).  Both sides' best interests were zealously represented by experienced and prepared counsel of their choosing.

The payments received by the Plaintiffs do not suggest fraud or collusion. Plaintiffs' alleged damages in this matter consist entirely of liquidated damages to which they claim they are entitled due to occasionally delayed payments of overtime

(which Defendant continues to dispute). The Settlement Agreement provides Plaintiffs with a fair portion of their disputed liquidated damages, attorneys' fees, and all of their litigation costs.

As one court noted, the average recovery in class actions is seven (7%) to eleven (11%) percent of claimed damages. *Dillworth v. Case Farms Processing, Inc.*, 2010 WL 776933 (N.D. Ohio, March 8, 2010) (discussing average class results while approving an FLSA settlement of one-third of claimed damages). Here, the recovery to Plaintiffs exceeds that average. The recovery to Plaintiffs in this settlement also exceeds the 3% recovery approved by other Courts in FLSA cases. *See*, e.g., *Andriello v. CFI Sales & Marketing, Inc.*, 2012 WL 3264920 (M.D. Fla., Jan. 4, 2012) (approval of a settlement resulting in a 3% recovery of claimed damages).

The Parties' settlement also provides each Named Plaintiff with an additional flat fee, Service Award commensurate with their individual payments, in recognition of their active participation in the lawsuit. The Court finds that the Service Awards are not indicative of any collusion or fraud given their relatively low amount.

The Parties' settlement eliminates the risks and costs both sides would bear if this litigation continued to decertification of the collective class (potentially resulting in multiple individual actions) and/or complete adjudication on the merits through trial, final judgment, and potential appeal(s). In agreeing upon the proposed

7

settlement, the Parties had sufficient information and conducted an adequate investigation to allow them to make an educated and informed analysis and conclusion as to the strengths and weaknesses of Plaintiffs' claims in comparison to their respective costs and the risks associated with further drawn-out litigation. The Parties were able to determine that settlement upon their negotiated terms was appropriate.

### 2. COMPLEXITY, EXPENSE, AND LIKELY DURATION OF THE LITIGATION

The complexity, expense, and length of continued litigation militate in favor of this settlement. Plaintiffs' claims are complex in theory and factually nuanced. For example, ultimately determining whether any retroactive payroll payment received by a Plaintiff is an actual violation of the FLSA would require a detailed analysis of the statutory and case law, the payment's circumstances, the specific way in which Defendant received notice of the need to make such payment, and the timeliness in processing the payment. The complexity of the legal issues and facts in this case cannot be overstated. The legal viability of the claims is disputed by the Parties. The case itself involves a 24-hour manufacturing operation, 228 Opt-Ins across multiple shifts and locations, a one-of-a-kind payroll system, tens of payroll-approving managers, and a workforce that is permitted under the relevant collective bargaining to switch and trade shifts with coworkers.

8

Avoiding the significant expense and time of continuing litigation of these complex claims and proofs is in the Parties' best interests.  Should this matter continue, the Parties would need to complete significant discovery consisting of tens of depositions and voluminous written discovery and document production.  They would then need to brief and argue the competing sides of a decertification motion and then a motion for summary judgment.  Based on the resultant rulings, if necessary, the Parties would then have to prepare for and put on a complex and lengthy jury trial.  This case would surely proceed for several months.

The Parties have compromised to avoid either experiencing an extreme outcome—dismissal for Plaintiffs or a judgment for Defendant.  The Parties' settlement is a reasonable means for the Parties to minimize or altogether avoid future time expended, risks, and litigation costs.

### 3.    AMOUNT OF DISCOVERY ENGAGED IN BY THE PARTIES

The Parties engaged in extensive pre-certification discovery in this matter—providing them a well-informed basis to evaluate their respective claims and defenses before deciding to compromise on resolution of this matter.  The Named Plaintiffs (David Athan, Corey Parker, Robert Flannery, Daryl Jackson, and Dennis Smith) were all deposed regarding the issues related to conditional certification as a collective action.  Plaintiffs deposed two corporate representatives for Defendant regarding the same issues.  Each party responded to written interrogatories and

requests for the production of documents.  Defendant alone produced over 8,800 documents.  The meet and confer process built into the notice procedure provided the Parties an in-depth analysis of each Opt-In's maximum amount of liquidated damages that could be claimed—subject to acknowledged limitations.

The Parties reviewed all of the exchanged and available information and used it to evaluate the merits of their respective claims or defenses in comparison to the costs and risks associated with further litigation.  The Parties' settlement is based on the most accurate estimate of Plaintiffs' claimed liquidated damages, adjusted for the purposes of compromise in light of the risks and costs associated with proceeding.

### 4.   THE LIKELIHOOD OF SUCCESS ON THE MERITS

The likelihood of Plaintiffs' success on the merits, and the amount they would be awarded, is uncertain, further suggesting that this settlement is fair and appropriate.  There are many unique factual and novel legal issues in this matter that make it difficult for the Parties' to gauge their respective likelihood of success. Thus, the Court agrees that this proposed settlement is a fair and reasonable settlement in relation to the potential risks and uncertain recovery in this case.

### 5.   OPINIONS OF CLASS COUNSEL AND REPRESENTATIVES

Plaintiffs' Counsel believes that the Settlement Agreement is a fair and reasonable compromise of the disputed issues for all the reasons stated in the Parties'

Joint Motion.  Moreover, the Class Representatives, David Athan, Corey Parker, Robert Flannery,[1] Daryl Jackson, and Dennis Smith, believe that the Settlement Agreement contains a fair and reasonable compromise of the disputed issues and provides for recovery prior to a long, drawn out and risky adjudication of the case's merits.

### 6.  THE REACTION OF ABSENT CLASS MEMBERS

Because this is an opt-in FLSA collective action, there are no absent class members.  The Opt-In Plaintiffs in this case have agreed to be bound by any outcome in this lawsuit whether favorable or unfavorable.

### 7.  THE PUBLIC INTEREST

The public interest is served by the proposed settlement as it implicitly serves the purpose and intent of Congress in enacting the FLSA—"to raise substandard wages and to give additional compensation for overtime work … thereby helping to protect this nation 'from the evils and dangers resulting from wages too low to buy the bare necessities of life and from long hours of work injurious to health.'" *U.S. v. Rosenwasser*, 323 U.S. 360, 361 (1945) (*quoting* Sen. Rep. No. 884 (75th Conf., 1st Sess.)).  While Plaintiffs earn well above a substandard wage, the Parties recognize that the timing of certain retroactive overtime payments was disputed in this case

---

[1] The estate of whom is acting through personal representative Josh Flannery.  See ECF No. 76.

and Congressional intent has been achieved where Plaintiffs were able to pursue their claims with competent and experienced counsel.

The public's interest has been satisfied by this settlement, even though the Settlement Agreement has not been publicly filed. The Court has chosen to evaluate the fairness and reasonableness of the Parties' settlement without requiring that the settlement agreement be publicly filed, just as many other Courts around the country have done. *See,* e.g., *Lakosky v. Discount Tire Co., Inc*., 2015 WL 4617186 (E.D. Mich., July 31, 2015); *Griffin v. Lady Jane's Haircuts for Men Holding Company, LLC,* 2019 WL 2135648 (E.D. Mich., May 15, 2019); *Dillworth v. Case Farms Processing, Inc.*, 2010 WL 776933 (N.D. Ohio, Mar. 8, 2010); *Pittman v. Matalco (U.S.), Inc.*, 2018 WL 6567801 (N.D. Ohio, Dec. 13, 2018); *Bradford v. Legacy Health Services,* 2014 WL 7185453 (N.D. Ohio, Dec. 16, 2014); *Hill v. Medicare Transport, Inc.*, 2019 WL 5425167 (N.D. Ohio, Oct. 22, 2019); *Gentrup v. Renovo Services, LLC*, 2011 WL 2532922 (S.D. Ohio, June 24, 2011); *Cruthis v. Vision's*, 2014 WL 4092325 (E.D. Ark., Aug. 19, 2014); *Moore v. South Florida Restoration, Inc.*, 2018 WL 6620872 (S.D. Fla., Nov. 16, 2018); *Massey v. Tobler Construction, Inc.*, 2013 WL 12167535 (M.D. Fla., Mar. 29, 2013); *King v. Wells Fargo Home Mortg.*, 2009 WL 2370640 (M.D. Fla., July 30, 2009).

The Parties' are not concealing the existence of a settlement from the public. The Parties' motion is publicly filed and discloses all significant material terms of

the Settlement Agreement, except for the specific payment amounts.  As the *Pittman* court noted, since there are multiple issues in dispute that are being resolved in the Parties' settlement, the public would "stand to learn little about the value of any given FLSA dispute by viewing the terms of the settlement agreement." *Pittman,* at *2.  The same holds true here where the only terms not being disclosed are the actual dollar amounts of the payments.  The Court is satisfied that the public has sufficient information to evaluate the fairness of the Parties' compromise without seeing the agreement itself.  After reviewing the Parties' Settlement Agreement *in camera,* the Court is satisfied that the Agreement is a fair and reasonable compromise of a *bona fide* dispute.

Plaintiffs are receiving a fair percentage of their claimed damages in light of the unique legal and factual issues presented.  The Named Plaintiffs will receive a reasonable Service Award that nonetheless falls far short of any windfall that could possibly suggest collusion.  The Settlement Agreement provides that all of Plaintiffs costs are reimbursed and the negotiated attorneys' fees represent less than the actual fees incurred by the Plaintiffs.

In exchange for these payments, Plaintiffs are dismissing this case with prejudice and without any further costs or fees to any party.  They are also releasing Defendant, and the other released parties, from any and all wage and hour claims,

and agreeing to arbitrate any action to enforce the settlement agreement.  Of course,

no Plaintiff has waived any claim that cannot be waived under the law.

## II.   PLAINTIFFS' COUNSEL IS ENTITLED TO THEIR NEGOTIATED ATTORNEYS' FEES AND COSTS

Section 216(b) of the FLSA provides that "[t]he court in such action shall, in

addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable

attorney's fee to be paid by the defendant, and costs of the action."  29 U.S.C. §

216(b).  An award of attorneys' fees to a prevailing plaintiff under § 216(b) of the

FLSA is mandatory, but the amount of the award is within the discretion of the judge.

*Fegley v. Higgins*, 19 F.3d 1126, 1134 (6th Cir. 1994).

The negotiated attorneys' fees and costs being provided under the Settlement

Agreement are reasonable given the unique legal theories presented in the case and

the amount of resources expended to investigate, research, analyze, and prepare

Plaintiffs' claims for litigation.   Specifically, Plaintiffs' Counsel spent a significant

amount of time: investigating the potential claims; drafting pleadings and motion

responses; engaging in written discovery; preparing for and defending depositions;

analyzing each Plaintiff's pay records; meeting and conferring with Defendant's

counsel for purposes of identifying the Conditional Collective Group from the

Potentially Eligible Opt-Ins that filed a Consent to Join; otherwise corresponding

with Defendant's counsel; reviewing documents related to Plaintiffs' theory of

delayed overtime; evaluating various damage models; negotiating the Settlement Agreement; and filing this Motion. These activities are necessarily time consuming.

Plaintiffs have submitted, and the Court agrees, that the attorneys' fees and costs contained in the Settlement Agreement are reasonable. The fees are all the more reasonable given that they are the result of vigorous negotiations between the Parties and are less than the total lodestar actually incurred on this matter by Plaintiffs' Counsel.

## III.   CONCLUSION

The Court finds that the Parties' settlement is a fair and reasonable resolution of a bona fide dispute over FLSA issues that binds the Named Plaintiffs and each Opt-In Plaintiff. As such, the Court GRANTS the Parties' Joint Motion To Approve Settlement, approves the Parties' Settlement Agreement, and dismisses Plaintiffs' Complaint and this action with prejudice and without any further costs or fees to any party.

_____
Hon. Terrence G. Berg
Dated: _____        United States District Judge

45920114.1

15

# EXHIBIT 2

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

**DAVID ATHAN,  DARYL JACKSON,**
**COREY PARKER AND ROBERT**
**FLANNERY,** on behalf of themselves
and all other persons similarly situated,          Case No. 2:17-cv-14220
known and unknown,                                 Hon. Terrence G. Berg

                         Plaintiffs,

vs.

**UNITED STATES STEEL CORP**., a
foreign profit corporation,

                         Defendant.
_____

## DECLARATION OF JESSE L. YOUNG

I, Jesse L. Young, pursuant to 28 U.S.C. § 1746, declare as follows:

1.      I have been involved in this case since February 2018 and have personal knowledge of the events and facts described herein.  I am over the age of 21, and could, if called to testify, attest to the events and facts described below.

2.      I am an equity partner at Kreis, Enderle, Hudgins & Borsos, P.C. which has approximately 30 attorneys.  I practice out of our Kalamazoo, Michigan office.

3.      Prior to joining Kreis Enderle in 2018, I was a shareholder at the Southfield-based firm of Sommers Schwartz, P.C. where I practiced plaintiff-side employment law for approximately 10 years.  From 2012 through 2018, I practiced

1

exclusively wage-and-hour law and handled class and collective actions across the United States.

4.     Throughout my career, I have acted as class counsel for plaintiffs in dozens of wage-and-hour class and collective actions, including but not limited to:

- *Whitfield v. Trinity Rest. Group, LLC* (E.D. Mich., Case No. 18-cv-10973)
- *Matthews v. Hyatt Corporation* (W.D.N.C., Case No. 17-cv-0413)
- *Oullette v. Ameridial, Inc.* (N.D. Ohio, Case No. 16-cv-2144)
- *Anderson v. The Minacs Group, Inc.* (E.D. Mich., Case No. 16-cv-5363)
- *Gullage v. Cognosanto, LLC* (M.D. Tenn., Case No. 16-cv-2816)
- *Serbay v. DialogDirect, Inc.* (E.D. Mich., Case No. 16-cv-12716)
- *Gaffers v. Trinity Servs., Inc.* (E.D. Mich., Case No. 16-cv-10128)
- *Armstrong v. Concentrix Corporation* (N.D. Cal., Case No. 16-cv-5363)
- *Brown v. Permanente Med. Group, Inc.* (N.D. Cal., Case No. 16-cv-5272)
- *Owens et al. v. GLH Cap. Enterprise, Inc.* (S.D. Ill., Case No. 16-cv-1109)
- *Wengerd et. al. v. Self-Reliance, Inc.* (S.D. Ohio, 15-cv-0293)
- *Lee v. Asurion Insurance Services et al.* (D. Ariz., Case No. 15-cv-2606)
- *Downard v. Reno, Inc. et al.* (W.D. Mich., Case No. 16-cv-0927)
- *Bourne v. Ansara Restaurant Group* (E.D. Mich., Case No. 16-cv-10332)
- *Rangel v. Compliance Staffing Agency* (M.D. Ga., Case No. 15-cv-0008)
- *Padan v. West Corporation* (D. Nev., Case No. 15-cv-0394)
- *Kie v. iVox Solutions* (S.D. Fla., Case No. 15-cv-14296)
- *Alderoty v. Maxim Healthcare Services* (D. Md., Case No. 14-cv-2549)
- *Atkinson v. TeleTech, LLC* (S.D. Ohio, Case No. 14-cv-0253)
- *Tarrant v. Sutherland Global Services* (W.D.N.Y., Case No. 15-cv-6320)
- *Wright v. Jacob Transpt Servs, LLC et al.* (D. Nev., Case No. 15-cv-0056)

2

- *Wilson v. Maxim Healthcare Services* (W.D. Wash., Case No. 14-cv-0789)
- *Cardoza v. Bloomin' Brands Inc. et al.* (D. Nev., Case No. 13-cv-1820)
- *Matthews v. Convergys Corp. et al.* (W.D.N.C., Case No. 14-cv-0125)
- *Ingram v. Passmore Towing & Recovery* (N.D. Ala., Case No. 14-cv-0004)
- *Terry v. TMX Finance LLC et al.* (N.D. Ill., Case No. 13-cv-6156)
- *Lawrence vs. Maxim Healthcare Servs.* (N.D. Ohio, Case No. 12-cv-2600)
- *Stelmachers vs. Maxim Healthcare Servs.* (N.D. Ga., Case No. 13-cv-1062)
- *Williams vs. Sykes Enterprises, Inc.* (D. Minn., Case No. 13-cv-0946)
- *Flores vs. Velocity Express, Inc.* (N.D. Cal., Case No. 12-cv-5790)

5.     Currently, I represent employees and employers in all types of employment litigation.  However, my practice still primarily consists of contingent wage-and-hour litigation under federal law (the Fair Labor Standards Act) and various state laws.  My credentials are attached hereto as ***Exhibit 1***.

6.     On December 29, 2017, Plaintiffs filed their Complaint and Jury Demand initiating this action on behalf of themselves and all other persons similarly situated, seeking damages for alleged violations of the Fair Labor Standards Act ("FLSA") (ECF No. 1).

7.     Plaintiffs asserted four claims:

    a. Count I: Violation of the Minimum Wage Provisions of the FLSA – Timely Payment.  In this count, Plaintiffs sought liquidated damages for what they claimed were delayed payments of minimum wage when they purportedly "did not receive payment for all hours worked until subsequent pay periods" (ECF No. 1, PageID 12);

    b. Count II: Violation of the Overtime Provisions of the FLSA – Timely Payment.  In this count, Plaintiffs sought liquidated damages

for what they claimed were delayed payments of overtime when they purportedly "did not receive payment for all overtime hours worked until subsequent pay periods, in violation of the overtime wage requirement provision of 29 U.S.C. § 207(a)" (ECF No. 1, PageID 15);

c. Count III: Violation of the Minimum Wage Provisions of the FLSA – Nonpayment.  In this count, Plaintiffs sought unpaid minimum wage and liquidated damages for hours worked which they claimed were unpaid as of the filing of the complaint (ECF No. 1, PageID 17); and

d. Count IV: Violation of the Overtime Provisions of the FLSA – Nonpayment.  In this final count, Plaintiffs sought unpaid wages and liquidated damages for overtime wages which they claimed were unpaid as of the filing of the complaint (ECF No. 1, PageID 19).

8.    Along with their Complaint, Plaintiffs also filed a Motion for Conditional Class Certification and Court Supervised Notice Pursuant to 29 U.S.C. §216(B) asking this Court to conditionally certify a group of current and former employees allowing them to proceed as an FLSA collective action (ECF No. 8).

9.    In response to Plaintiffs' Complaint, Defendant concurrently filed an Answer and a Motion to Dismiss for Failure to Exhaust Contractual Remedies and to Bring Claims Within the Six-Month Statute of Limitations for §301 of the Labor Management Relations Act (ECF Nos. 15 & 16).

10.    Plaintiffs then filed a First Amended Complaint (ECF No. 19) and Second Amended Complaint (ECF No. 38), which maintained the same four claims and theories as their original complaint.

11.    In response, Defendant filed two Renewed Motions to Dismiss (ECF Nos. 23 & 39).

12.    Meanwhile, the Parties adjourned Plaintiffs' request for conditional certification and, over the course of several months, engaged in significant pre-conditional certification discovery—including document productions, written discovery, and depositions—aimed solely at exploring the appropriateness of FLSA collective action conditional certification.

13.    Then, on February 4, 2019, the Court granted, in part, and denied, in part, Defendant's Motion to Dismiss Plaintiffs' Second Amended Complaint (ECF No. 46).  Plaintiffs' claims for delayed payment of minimum wage (Count I) and unpaid minimum wage (Count III) were dismissed.  Plaintiffs' claims for delayed payment of overtime (Count II) and unpaid overtime (Count IV) were permitted to proceed.  *Id.*

14.    After Defendant filed an Answer to Plaintiffs' Second Amended Complaint, the Parties negotiated and submitted a Joint Stipulated Order of Conditional Certification, which was entered on March 18, 2019, conditionally certifying the following group of individuals pursuant to §216(b) of the FLSA, known as the "Conditional Collective Group:"

> All hourly employees in the Production and Maintenance Bargaining Unit at Great Lakes Works, including Zug Island and Dearborn, who during the time period February 14, 2016 through March 11, 2019 had a retro adjust inquiry or retro adjust lump sum to his or her paycheck

for previously unpaid overtime as defined by the Fair Labor Standards Act.

(ECF No. 55, PageID2348).

15.     The Conditional Certification was followed by a unique Stipulated Notice Procedure (ECF No. 56) where the Parties agreed to send notice to a broader group than that which was conditionally certified by the Court, based on the "administrative burden involved in first identifying which employee's retro adjust inquiry and/or retro adjust lump sum payments reflect previously unpaid overtime as defined by the Fair Labor Standards Act."

16.     As part of the Notice Procedure, the Parties then met and conferred regarding the individuals who filed a Consent to Join to determine whether they met the narrower definition required to be a part of the Conditional Collective Group (ECF No. 56).

17.     At the conclusion of the 60 day Opt-In Period (ECF No. 56, PageID 2355), 228 individuals, including the Named Plaintiffs, filed Consents to Join the Conditional Collective Group and to be bound by this lawsuit's result (ECF Nos. 2 – 6, 24, 27, 44, 45, 48, 51 – 53, 57, 59 – 71, 77).

18.     The Parties next negotiated a Joint Discovery Plan to take discovery on the merits of the Plaintiffs' claims and their alleged damages (ECF No. 79), prior to any decertification or dispositive motion.  The plan was submitted to this Court on April 8, 2020.  *Id.*

6

19.    The Parties began merits discovery by making their initial disclosures and sending out a portion of the written discovery contemplated by the Joint Discovery Plan (ECF No. 79).

20.    Before incurring the significant costs necessary to complete merits discovery, the Parties agreed to mediate this matter with neutral third party David Calzone (Calzone Mediations LLC).

21.    In advance of the mediation, the Parties engaged in preliminary negotiations and exchanged competing methods for computing Plaintiffs' potential damages.

22.    The Parties mediated this matter on December 2, 2020.

23.    Over the course of a 12-hour mediation session, the Parties successfully negotiated a mutually agreeable arms' length resolution of the case.

24.    The Settlement Agreement provides, *inter alia*: monetary payments to the Plaintiffs representing a fair percentage of their claimed damages in light of the legal and factual issues; a proportionate service award to each of the Named Plaintiffs; reimbursement of certain litigation costs; and a reasonable attorneys' fee to Plaintiffs' Counsel.  In exchange, Plaintiffs agree to release Defendant from all wage and hour claims and dismiss this case with prejudice and without any further costs or fees.

25.     Plaintiffs' negotiated fees and costs are more than reasonable.  First, my firm's long-standing policies and standard business practices require all attorney and paralegal time to be accurately entered into a timekeeping system contemporaneous with all work performed, with an accurate description of the task performed, and time spent on such task entered into the timekeeping system. The timekeeping systems are then used to generate bills sent to clients in hourly cases, and to track the details and value of time worked, based on the firm's current hourly rates, in contingency cases such as this one.

26.     Consistent with Plaintiffs' Counsel's policies and practices, we contemporaneously tracked the tasks performed in connection with this case and the specific amount of time taken to perform the tasks (billed in tenths of an hour). I have reviewed all of the time entries billed to this case to ensure that the fees incurred are reasonable.

27.     Former Kreis Enderle associate attorney, Thomas Cedoz, performed substantive work in this case at my direction.

28.     According to these contemporaneous time records, Kreis Enderle has incurred 248.3 hours to date:

| NAME | TOTAL HOURS |
|---|---|
| Jesse Young | 214.2 |
| Thomas Cedoz | 34.1 |
| **TOTALS** | **248.3** |

8

29.    Based on my experience practicing nationally, and in Michigan and Metro Detroit, I have become knowledgeable about the hourly rates that law firms in this area charge for attorneys and paralegals of various levels of experience, reputation, and seniority. Based on this knowledge and experience, my hourly rate, based on my experience and reputation, is designed to compete with appropriate rates charged by other law firms in this jurisdiction and nationwide.

30.    Prior history shows that the negotiated attorneys' fees are reasonable and appropriate. This Court has approved my standard hourly rates as reasonable in FLSA collective actions. *See e.g.*, *Whitfield v. Trinity Rest. Group, LLC*, Case No. 18-cv-10973 (E.D. Mich.) ($475 per hour) (ECF No. 68); *Bourne v. Ansara Restaurant Group*, Case No. 16-cv-10332 (E.D. Mich.) ($425 per hour) (ECF No. 132).

31.    In addition to fees, my firm advanced reasonable litigation expenses of $7,624.26 in order to prosecute this case.

32.    I have personally reviewed my firm's business records which show the expenses consisted primarily of filing fees, legal research fees, postage fees, and travel expenses.  These expenses, as well as all others included in this submission, were reasonable and necessary in order to prosecute this case.

33.    For all the reasons stated above, the requested attorneys' fees and costs are fair and reasonable and require no adjustments.

9

34.     I declare under penalty of perjury that the statements above are true based

upon my own personal knowledge, information and belief.


Dated:  February 5, 2021                    _____

                                            Jesse L. Young

# EXHIBIT 1



# Jesse Young

### SHAREHOLDER
JYoung@kehb.com

### EDUCATION
Western Michigan University Cooley Law School, J.D.
• Cum Laude
• Member of Law Review
Western Michigan University, B.A., Kalamazoo, Michigan
Residential Builders License, State of Michigan No. 2101171400

### COMMUNITY INVOLVEMENT
Habitat for Humanity Board of Directors – 2012 to present
Habitat for Humanity – 2011 Volunteer of the Year

### PRACTICE AREAS
Employment Law
Civil Litigation



### BAR ADMISSIONS
Michigan

U.S. Supreme Court

U.S. Court of Appeals
for the Sixth Circuit

U.S. District Court, Eastern
District of Michigan

U.S. District Court, Western
District of Michigan

U.S. District
Court of Colorado

### MEMBERSHIPS
American Bar Association

Federal Bar Association

National Employment
Lawyers Association

State Bar of Michigan

American Association
for Justice

**JESSE YOUNG** is an employment litigation attorney. As a member of Kreis Enderle's Business and Employment Group, he represents individuals and businesses involved in serious employment disputes including but not limited to issues of severance negotiations, discrimination, retaliation, whistleblowing activity, employment contracts, terminations, and compliance.

In addition, Jesse also has extensive experience with – and is probably best known for – handling wage and hour disputes arising under the Fair Labor Standards Act (FLSA) and similar state laws. In this regard, he has represented businesses and individuals nationwide dealing with the payment of minimum wages and/or overtime, classification of employees, "off the clock" work, meal breaks, donning and doffing of work equipment, recordkeeping, and other issues peculiar to a wide variety of industries.

Jesse has been appointed to leadership positions in dozens of complex class action litigation matters across the country.  In these positions, he has helped secure multi-million dollar recoveries in class actions involving thousands of plaintiffs.

Jesse's dynamic practice has taken him around the country to represent his clients. He has briefed and argued cases in Michigan state courts, the Michigan Court of Appeals, the U.S. Court of Appeals for the Sixth Circuit, and dozens of federal U.S. District Courts nationwide.  He has also attended several arguments before the U.S. Supreme Court.

## Notable Results

- $6.25 million class settlement on behalf of "advice nurses" who were not properly paid wages and overtime for off-the-clock work in violation of the Fair Labor Standards Act.
- $6.55 million collective action settlement on behalf of exotic dancers working at a Déjà Vu gentleman's clubs that misclassified them as independent contractors, forced them to pay "rent," and failed to pay minimum wage.
- $680,000 class action settlement involving restaurant employees who alleged they were forced to share tips with ineligible employees.
- $3.0 million class action settlement involving restaurant employees who alleged they were not properly paid minimum wage and overtime.
- $3.5 million class action settlement on behalf of home-based customer service agents who claimed their employer unlawfully withheld compensation in violation of the Fair Labor Standards Act.
- $7.5 million settlement in nationwide wage and hour collective action involving call center employees who were not paid for their pre-shift computer login and boot-up time.
- $4.5 million settlement in nationwide wage and hour class action involving at-home call center employees who alleged they were not paid for their pre-shift computer login and boot-up time and for time spent working "off-the-clock" while experiencing system downtime.
- $1.1 million settlement in nationwide wage and hour class action involving at-home call center employees who alleged they were not paid for their pre-shift computer login and boot-up time and for time spent working "off-the-clock" while experiencing system downtime.
- $1.075 million class action settlement for at-home customer service representatives who alleged that their employer failed to pay wages and overtime for "off the clock" work.
- $1.4 million wage and hour collective action settlement involving call center employees who alleged they were not paid for their pre-shift computer login and boot-up time.
- $1.6 million settlement in a collective action on behalf of hundreds of salaried recruiters who alleged they were not paid overtime after their employer misclassified them as exempt employees.
- $11.3 million collective action settlement on behalf of exotic dancers working at a Déjà Vu gentleman's clubs in an action brought in Michigan under the Fair Labor Standards Act (FLSA) for failure to pay minimum wage.
- $3.6 million Equal Protection lawsuit: Jesse Young assisted Andrew Kochanowski in obtaining a jury verdict against a city that discriminated against a property owner in violation of the 14th Amendment's Equal Protection clause.

## Honors/Awards

The American Society of Legal Advocates – Top 40 Under 40 Labor & Employment Lawyers – 2018
Michigan Lawyers Weekly "Up & Coming Lawyers" – 2014
Super Lawyers Rising Stars (Michigan) – 2012 to present
Seminars/Lectures

- Speaker, 2018 FLSA Update, Institute of Continuing Legal Education, 43rd Annual Labor & Employment Law Institute Seminar, Plymouth, MI
- Panelist, 2017 FLSA Developments, Institute of Continuing Legal Education, Ann Arbor, MI
- Speaker, 2017 FLSA Update, Institute of Continuing Legal Education, 42nd Annual Labor & Employment Law Institute Seminar, Plymouth, MI
- Panelist, "Who is the Employer and Who is an Employee? Recent Legal Developments Defining the Workforce in the Gig Economy," State Bar of Michigan Labor and Employment Law Section, 2016 Mid-Winter Meeting, Detroit, MI
- Faculty and Speaker, "Defending a Deposition," 2015 Deposition Skills Workshop, Institute of Continuing Legal Education, Plymouth, MI
- Moderator, 2014 FLSA Update, Institute of Continuing Legal Education, Ann Arbor, MI
- Speaker, 2014 Ohio Association for Justice Advanced Wage and Hour Seminar, Proving an "Off the Clock" Case Without Documentary Evidence, Park City, UT
- Speaker, 2013 American Association for Justice Annual Convention, The Fair Labor Standards Act: Making New Client Intake a Success, San Francisco, CA
- Speaker, 2013 Great Lakes Mass Torts Institute, An Overview of the Fair Labor Standards Act, Detroit, MI
- Speaker, 2012 Mentor Jet: Taking Networking to New Heights, Cooley Law School program, Auburn Hills, MI

# EXHIBIT 3

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

**DAVID ATHAN,  DARYL JACKSON,**
**COREY PARKER AND ROBERT**
**FLANNERY,** on behalf of themselves and all
other persons similarly situated, known and
unknown,

Case No. 2:17-cv-14220
Hon. Terrence G. Berg

                      Plaintiffs,

vs.

**UNITED STATES STEEL CORP**., a foreign
profit corporation,

                      Defendant.

_____

**<u>DECLARATION OF BRYAN YALDOU</u>**

       In accordance with 28 U.S.C. § 1746, I, Bryan Yaldou, first being duly sworn, deposes and states as follows:

1.      I have been involved in this case from the beginning and have personal knowledge of the events and facts described herein.  I am over the age of 21, and could, if called to testify, attest to the events and facts described below.

2.      I am the owner of the Law Offices of Bryan Yaldou, LLC and a substantial amount of my practice involves wage and hour litigation under both federal law (the Fair Labor Standards Act) and state laws (Michigan Workforce Opportunity Wage Act).

3.      I began my career as a litigator in 2007 and since 2014 I have represented numerous individuals in FLSA matters.

4.      I have been the lead counsel on the following FLSA cases:

          •    *McAdoo et al v. Cellco Partnership et al*, 2:14-cv-10257-VAR-DRG;

- *Jackson v. Dynamic Railroad Consulting, LLC*, 2:14-cv-11060-PDB-DRG;
- *Gray v. J&PT Enterprises LLC et al*, 2:14-cv-12244-SFC-MKN;
- *Guyot v. Ramsey et al*, 2:14-cv-13521-GAD-MKM;
- *Wallace v. First Financial Insurance Group et al*, 2:14-cv-1314-VAR-MJH;
- *Whaley v. Henry Ford Health System*, 2:15-cv-12101;
- *Langlands et al v. JK&T Wings, Inc.*, 2:15-cv-13551-VAR-MJH;
- *Trikes et al v. Cooper Street Cookies*, LLC, 2:15-cv-13756-AJT-MJH;
- *Delmonico v. Overseas Patent Agency, Inc. et al*, 2:16-cv-10361-BAF-APP;
- *Kritcher v. Prudential Security, Inc. et al*, 2:16-cv-12637-BAF-EAS;
- *Snodgrass v. Cooper Street Cookies, LLC et al*, 2:16-cv-12766-GER-DRG;
- *Totté et al v. Quick Lane Oil & Lube et al*, 2:16-cv-12850-AC-RSW;
- *Goleniak v. Revolution Technologies LLC*, 4:16-cv-11054-TGB-SDD;
- *Pesenecker et al. v. Rainbow Enterprises, Inc. et al.*, 2:16-cv-11886-RHC-RSW;
- *Kritcher v. Prudential Security, Inc. et al.*, 2:16-cv-12637-BAF-EAS;
- *Ali et al. v. Comcast Cable Communications Management, LLC et al.*, 4:17-cv-11012-LVP-DRG;
- *Barber v. C.L. Williams Enterprises, Inc. et al.*, 5:17-cv-12429-JEL-SDD;
- *Athan et al. v. United States Steel Corporation*, 2:17-cv-14220-TGB-SDD;
- *Livingston v. Huron Clinton Metropolitan Authority*, 2:18-cv-10467-SJM-DRG;
- *Hegedus et al. v. Nexen Corporation et al.*, 2:18-cv-10798-MOB-MKM;
- *Wasilewski v. Silverstar Delivery, LTD, et al.*, 2:18-CV-12167-AJT-EAS

5.  I am licensed to practice in the State of Michigan and have been so since 2007.

6.  During this case I had one employees work closely with me, but she has since left the firm.

7.  Associate Attorney Elaina Bailey has been licensed in the State of Michigan since 2018.

She graduated from Wayne State University Law School in 2017. While in law school, she

focused her studies on labor and employment law and interned for the National Labor Relations Board and the U.S. Department of Labor Solicitor's Office.

8.    Currently, I primarily focus on Bankruptcy Law.  However, my practice still incorporates contingent wage-and-hour litigation under federal law (the Fair Labor Standards Act) and various state laws.  My credentials are attached hereto as ***Exhibit 1***.

9.    The Plaintiffs in this case first came to my office in June 2017 and produced time and pay records and other related documents. I spent a significant amount of research into whether this matter was actionable and whether it could be brought as a collective action under the FLSA. After a thorough investigation and retention of additional named Plaintiffs and Dennis Smith, I brought this FLSA lawsuit on Plaintiffs' behalf and on behalf of others similarly situated to Plaintiffs.

10.   On December 29, 2017, I filed Plaintiffs' Complaint and Jury Demand initiating this action on behalf of themselves and all other persons similarly situated, seeking damages for alleged violations of the Fair Labor Standards Act ("FLSA") (ECF No. 1).

11.   Plaintiffs asserted four claims:

    a.  Count I: Violation of the Minimum Wage Provisions of the FLSA – Timely Payment.  In this count, Plaintiffs sought liquidated damages for what they claimed were delayed payments of minimum wage when they purportedly "did not receive payment for all hours worked until subsequent pay periods" (ECF No. 1, PageID 12);

    b.  Count II: Violation of the Overtime Provisions of the FLSA – Timely Payment. In this count, Plaintiffs sought liquidated damages for what they claimed were delayed payments of overtime when they purportedly "did not receive payment

for all overtime hours worked until subsequent pay periods, in violation of the overtime wage requirement provision of 29 U.S.C. § 207(a)" (ECF No. 1, PageID 15);

c.  Count III: Violation of the Minimum Wage Provisions of the FLSA – Nonpayment.  In this count, Plaintiffs sought unpaid minimum wage and liquidated damages for hours worked which they claimed were unpaid as of the filing of the complaint (ECF No. 1, PageID 17); and

d.  Count IV: Violation of the Overtime Provisions of the FLSA – Nonpayment. In this final count, Plaintiffs sought unpaid wages and liquidated damages for overtime wages which they claimed were unpaid as of the filing of the complaint (ECF No. 1, PageID 19).

12.  Along with their Complaint, Plaintiffs also filed a Motion for Conditional Class Certification and Court Supervised Notice Pursuant to 29 U.S.C. §216(B) asking this Court to conditionally certify a group of current and former employees allowing them to proceed as an FLSA collective action (ECF No. 8).

13.  In response to Plaintiffs' Complaint, Defendant concurrently filed an Answer and a Motion to Dismiss for Failure to Exhaust Contractual Remedies and to Bring Claims Within the Six-Month Statute of Limitations for §301 of the Labor Management Relations Act (ECF Nos. 15 & 16).

14.  Shortly thereafter, Plaintiffs retained Attorney Jesse Young to assist in the prosecution of this matter.

DocuSign Envelope ID: 4F991150-84F2-46DF-A1EC-99CC5DD42FE9

15.     Plaintiffs then filed a First Amended Complaint (ECF No. 19) and Second Amended Complaint (ECF No. 38), which maintained the same four claims and theories as their original complaint.

16.     In response, Defendant filed two Renewed Motions to Dismiss (ECF Nos. 23 & 39).

17.     Meanwhile, the Parties adjourned Plaintiffs' request for conditional certification and, over the course of several months, engaged in significant pre-conditional certification discovery—including document productions, written discovery, and depositions—aimed solely at exploring the appropriateness of FLSA collective action conditional certification.

18.     Then, on February 4, 2019, the Court granted, in part, and denied, in part, Defendant's Motion to Dismiss Plaintiffs' Second Amended Complaint (ECF No. 46). Plaintiffs' claims for delayed payment of minimum wage (Count I) and unpaid minimum wage (Count III) were dismissed. Plaintiffs' claims for delayed payment of overtime (Count II) and unpaid overtime (Count IV) were permitted to proceed. *Id.*

19.     After Defendant filed an Answer to Plaintiffs' Second Amended Complaint, the Parties negotiated and submitted a Joint Stipulated Order of Conditional Certification, which was entered on March 18, 2019, conditionally certifying the following group of individuals pursuant to §216(b) of the FLSA, known as the "Conditional Collective Group:"

> All hourly employees in the Production and Maintenance Bargaining Unit at Great Lakes Works, including Zug Island and Dearborn, who during the time period February 14, 2016 through March 11, 2019 had a retro adjust inquiry or retro adjust lump sum to his or her paycheck for previously unpaid overtime as defined by the Fair Labor Standards Act.
>
> (ECF No. 55, PageID2348).

20.     The Conditional Certification was followed by a unique Stipulated Notice Procedure (ECF No. 56) where the Parties agreed to send notice to a broader group than that which was

conditionally certified by the Court, based on the "administrative burden involved in first identifying which employee's retro adjust inquiry and/or retro adjust lump sum payments reflect previously unpaid overtime as defined by the Fair Labor Standards Act."

21. As part of the Notice Procedure, the Parties then met and conferred regarding the individuals who filed a Consent to Join to determine whether they met the narrower definition required to be a part of the Conditional Collective Group (ECF No. 56).

22. At the conclusion of the 60 day Opt-In Period (ECF No. 56, PageID 2355), 228 individuals, including the Named Plaintiffs, filed Consents to Join the Conditional Collective Group and to be bound by this lawsuit's result (ECF Nos. 2 – 6, 24, 27, 44, 45, 48, 51 – 53, 57, 59 – 71, 77).

23. The Parties next negotiated a Joint Discovery Plan to take discovery on the merits of the Plaintiffs' claims and their alleged damages (ECF No. 79), prior to any decertification or dispositive motion.  The plan was submitted to this Court on April 8, 2020.  *Id.*

24. The Parties began merits discovery by making their initial disclosures and sending out a portion of the written discovery contemplated by the Joint Discovery Plan (ECF No. 79).

25. Before incurring the significant costs necessary to complete merits discovery, the Parties agreed to mediate this matter with neutral third party David Calzone (Calzone Mediations LLC).

26. In advance of the mediation, the Parties engaged in preliminary negotiations and exchanged competing methods for computing Plaintiffs' potential damages.

27. The Parties mediated this matter on December 2, 2020.

28. Over the course of a 12-hour mediation session, the Parties successfully negotiated a mutually agreeable arms' length resolution of the case.

29.    The Settlement Agreement provides, *inter alia*: monetary payments to the Plaintiffs representing a fair percentage of their claimed damages in light of the legal and factual issues; a proportionate service award to each of the Named Plaintiffs; reimbursement of certain litigation costs; and a reasonable attorneys' fee to Plaintiffs' Counsel.  In exchange, Plaintiffs agree to release Defendant from all wage and hour claims and dismiss this case with prejudice and without any further costs or fees.

30.    Plaintiffs' negotiated fees and costs are more than reasonable.  At my firm we use a case management system that tracks time spent on each specific task and an associated fee for who completed the task. The timekeeping systems are then used to generate bills sent to clients in hourly cases, and to track the details and value of time worked, based on the firm's current hourly rates, in contingency cases such as this one.

31.    Consistent with Plaintiffs' Counsel's policies and practices, we contemporaneously tracked the tasks performed in connection with this case and the specific amount of time taken to perform the tasks (billed in tenths of an hour). I have reviewed all of the time entries billed to this case to ensure that the fees incurred are reasonable.

32.    Elaina Bailey associate attorney (former), performed substantive work in this case at my direction.

33.    According to these contemporaneous time records, The Law Office of Bryan Yaldou, PLLC has incurred 392 hours to date:

| NAME | TOTAL HOURS |
|---|---|
| Bryan Yaldou | 296 |
| Elaina Bailey | 96 |
| **TOTALS** | **392** |

34.     The billing records from my co-counsel's firm were also reviewed to ensure accuracy, reasonableness as to the type and amount of work performed, hours expended on that work and hourly rates charged.

35.     To date, Plaintiffs' Counsel has collectively spent over 600 hours working on this case. When Plaintiffs' Counsel's negotiated fee lodestar is divided by 600 hours, the blended hourly rate is more than reasonable.

36.     Based on my experience practicing nationally, and in Michigan and Metro Detroit, I have become knowledgeable about the hourly rates that law firms in this area charge for attorneys and paralegals of various levels of experience, reputation, and seniority. Based on this knowledge and experience, my hourly rate, based on my experience and reputation, is designed to compete with appropriate rates charged by other law firms in this jurisdiction and nationwide.

37.     In addition to fees, my firm advanced reasonable litigation expenses of $7,020 in order to prosecute this case.

38.     I have personally reviewed Plaintiffs' counsel's business records which show the expenses consisted primarily of filing fees, legal research fees, postage fees, and travel expenses. These expenses, as well as all others included in this submission, were reasonable and necessary in order to prosecute this case.

39.     For all the reasons stated above, the requested attorneys' fees and costs are fair and reasonable and require no adjustments.

40.     I declare under penalty of perjury that the statements above are true based upon my own personal knowledge, information and belief.

Dated:  February 4, 2021

Bryan Yaldou

_____

Bryan Yaldou

**Bryan Yaldou, J.D  (BY)** is the owner and primary practitioner at Consumer Protection Attorneys of Michigan, PLLC. He has been representing Debtors in bankruptcy since 2010, prior to which he represented creditors in bankruptcy proceedings for 2 years.

Education & Licensing:
- Bachelor of Arts, University of Michigan (Concentration in Philosophy & Sociology), Honors, 2004
- Juris Doctorate, Wayne State University Law School, 2007
- Admitted to State Bar of Michigan, 2007
- Admitted to practice in Eastern District of Michigan Federal Bankruptcy Court

Applicable Professional Experience: 2011 - present
- Owner & Primary Practitioner at Consumer Protection Attorneys of Michigan, PLLC:
- Represent clients in Chapter 7 & Chapter 13 Bankruptcy cases conducting initial consultations, representing clients in Court, drafting petitions & schedules, doing pre-petition Chapter 13 work including plan modifications, Motions, Stipulations & providing ongoing legal counsel;
- Landlord/Tenant & civil & criminal cases.
- Associate at Debt Relief Centers: 2010 - 2011
- Sole attorney managing Royal Oak, MI office meeting with clients;
- Represented clients in Chapter 7 & Chapter 13 Bankruptcy cases conducting initial consultations, representing clients in Court, drafting petitions & schedules, doing pre-petition Chapter 13 work including plan modifications, Motions, Stipulations & providing ongoing legal counsel.
- McKelvie & DeLuca, PC: 2008 - 2010
- Represented Chrysler Financial Services Americas, LLC in Consumer Bankruptcy Cases – attended meetings of creditors, argued motions, drafted various briefs & pleadings regarding same;
- Represented General Motors in Consume Breach of Warranty Lawsuits;

FLSA Lead Counsel Cases:
- *McAdoo et al v. Cellco Partnership et al*, 2:14-cv-10257-VAR-DRG;
- *Jackson v. Dynamic Railroad Consulting, LLC*, 2:14-cv-11060-PDB-DRG;
- *Gray v. J&PT Enterprises LLC et al*, 2:14-cv-12244-SFC-MKN;
- *Guyot v. Ramsey et al*, 2:14-cv-13521-GAD-MKM;
- *Wallace v. First Financial Insurance Group et al*, 2:14-cv-1314-VAR-MJH;
- *Whaley v. Henry Ford Health System*, 2:15-cv-12101;
- *Langlands et al v. JK&T Wings, Inc.*, 2:15-cv-13551-VAR-MJH;
- *Trikes et al v. Cooper Street Cookies*, LLC, 2:15-cv-13756-AJT-MJH;
- *Delmonico v. Overseas Patent Agency, Inc. et al*, 2:16-cv-10361-BAF-APP;
- *Kritcher v. Prudential Security, Inc. et al*, 2:16-cv-12637-BAF-EAS;
- *Snodgrass v. Cooper Street Cookies, LLC et al*, 2:16-cv-12766-GER-DRG;
- *Totté et al v. Quick Lane Oil & Lube et al*, 2:16-cv-12850-AC-RSW;
- *Goleniak v. Revolution Technologies LLC*, 4:16-cv-11054-TGB-SDD;
- *Pesenecker et al. v. Rainbow Enterprises, Inc. et al.*, 2:16-cv-11886-RHC-RSW;
- *Kritcher v. Prudential Security, Inc. et al.*, 2:16-cv-12637-BAF-EAS;

- *Ali et al. v. Comcast Cable Communications Management, LLC et al.*, 4:17-cv-11012-LVP-DRG;
- *Barber v. C.L. Williams Enterprises, Inc. et al.*, 5:17-cv-12429-JEL-SDD;
- *Athan et al. v. United States Steel Corporation*, 2:17-cv-14220-TGB-SDD;
- *Livingston v. Huron Clinton Metropolitan Authority*, 2:18-cv-10467-SJM-DRG;
- *Hegedus et al. v. Nexen Corporation et al.*, 2:18-cv-10798-MOB-MKM;
- *Wasilewski v. Silverstar Delivery, LTD, et al.*, 2:18-CV-12167-AJT-EAS

Professional Attendance:
- Member of the Consumer Bankruptcy Association
- Four Consumer Bankruptcy Association Dinners at the Peking House (past 3-4 years)
- Detroit Consumer Bankruptcy Conference, Dearborn, MI (November 2009)

# TAB  B

**Athan v. United States Steel Corp., Case No. 17-cv-14220 (E.D. Mich.)**
**Confidential Document**

| Name | Pro Rata Settlement Amounts |
|---|---|
| Abdulla, Tarak | |
| Agee, Keith James | |
| Akers, Crystal Marie | |
| Allen, Myea C | |
| Allred, Jason Anthony | |
| Almuflhi, Salah | |
| Ansari, Mikal Hasan | |
| Anthony, Andre Lamar | |
| Anucinski, Kimberley A | |
| Aponte, Charley | |
| Arquette, Kenneth Lee JR | |
| Athan, David Alan | |
| Austin, Richard D | |
| Baker, Richard G | |
| Baker, Stephanie Lenora | |
| Baldwin, Duane Anthony | |
| Bardallis, Eric Matthew | |
| Barley, Anthony Lee | |
| Barnes, Paul L | |
| Barr, Reba A | |
| Barragan, Antonio Jr | |
| Beamon, Jeffrey Scott | |
| Beasley, Johnathan R | |
| Bellamy, Margaret Christina | |
| Bellissimo, Anthony | |
| Bergeron, Robert | |
| Bertke, Richard Clark | |
| Bonner, Terrance Raynard | |
| Booth, Terry L | |
| Boyd, William Gerald Jr | |
| Boyless, Richard B | |
| Brandt, Rob F | |
| Bridges, Larry | |
| Brochue, Douglas Richard | |
| Brookins, Raymond Jr | |
| Brooks, Michael Christopher | |
| Brooks, Nathaniel Deshawn | |
| Brossoit, Aaron Michael | |
| Brossoit, Raymond F | |
| Brown, Clifford Bernard | |
| Brown, Glenn | |
| Brown, Hurriah W Jr | |

| | |
|---|---|
| Brunson, Philip | |
| Burke, Stanley Earl | |
| Byl, Steven James | |
| Cadarette, Candice Marie | |
| Cage, Charita D | |
| Campbell, Donald R | |
| Capobianco, Christopher Michael | |
| Carbajal, Eduardo | |
| Carlson, Jonathan Thomas | |
| Carter, Carolyn A | |
| Chapman, Boyd M | |
| Chapman, Sean Earl | |
| Chapman, Thomas Ronald | |
| Chapman, Valerie A | |
| Childers, Philip R | |
| Christman, Katherine H | |
| Clements, David Charles Jr | |
| Cook, Carlton Kemale Jr | |
| Crenshaw, Mark O | |
| Crouch, Gary Michael | |
| Cruz, Rudy Angelo | |
| D'Agostino, Daniel Leon | |
| Damron, Danny S | |
| Darby, Zede M | |
| Dean, Andrew James | |
| DeBene, Richard Francis Jr | |
| Disch, Terril Charles | |
| Dong, Russell Nicholas | |
| Dornoff, Shawn Lawrence | |
| Douglas, Willie J | |
| Dunn, Kevin M | |
| Dupuie, Rollin Louis | |
| Dupuy, Christopher | |
| Ellison, Todd Clifford | |
| Ewert, David P | |
| Feldt, Christopher Matthew | |
| Fisher, Carmela M | |
| Fisher, Charles Jr | |
| Fisher, John Bruce | |
| Fitzpatrick, Jenny L | |
| Flannery, Robert Joseph | |
| Fraterman, Patrick | |
| Fregonara, Michael J | |
| Frost, Nicholas Robert | |
| Gaddy, Roderic Earl | |
| Gadwell, Daniel Richard | |
| Gauvin, Daniel J | |

| | |
|---|---|
| Giddens, Lorna C | |
| Gipson, Sylvia J | |
| Gonzalez, Sindo L | |
| Gordon, Aaron P | |
| Gordon, Darnell Anthony | |
| Gourlay, Charles D | |
| Graham, Jack R | |
| Gray, Laura L | |
| Grayson, Clayton E | |
| Grayson, Nicholas Glenn | |
| Green, Lynne H | |
| Griffey, William A | |
| Griffith, Michael Allen | |
| Grzyb, Dale Richard | |
| Gubran, Akram Fadhl | |
| Haas, Frederick A | |
| Hampton, Edward Jr | |
| Handy, Joseph Edward | |
| Harhara, Hussin Ali | |
| Harrington, Ricardo L | |
| Harris Walker, Lynn M | |
| Hector, Vernon E Jr | |
| Henry, Johann Johnae | |
| Hillenbrand, Andrew J | |
| Hodges, David Alan | |
| Hoedebeck, Kevin P | |
| Hosea, Charles Walter | |
| Hughes, Paul M | |
| Hunter, Andrew Algernon | |
| Ilijevski, Mirko | |
| Jackson, Daryl T | |
| Jacob, Jason Allan | |
| Jakob, David Terry | |
| James, William B | |
| Jenkins, David | |
| Jergovich, Ronnie D | |
| Johnson, Larry M | |
| Jones, Adrienne Valerie | |
| Jones, Micheal Lamar | |
| Keiser, John L | |
| Kerr, Thomas P | |
| Kirila, Dan John | |
| Kirk, Jason Lee | |
| Kwasniak, Michael James | |
| Labonte, Mark David | |
| Lacombe, Gerard H | |
| Lacy, Antijuan Jikelo | |

| | |
|---|---|
| Laduke, Scott M | |
| Lasley, Alena Kay | |
| Lawson, Antoine D | |
| Lengyel, Michael A | |
| Logan, John Antwone | |
| Logsdon, Paul G | |
| Long, Jimmy Lenore | |
| Love, Dechone | |
| Loveday, Matthew S | |
| Luster, Carmen D | |
| Mason, Rod B | |
| Mathews, Nicholas C | |
| Maxwell, Kwombi Kenyata | |
| McFarland, Troy E | |
| McIver, Richard H | |
| Meggison, Guy L | |
| Mendoza, Luis | |
| Messisco, Keith Eugene | |
| Mihuc, John | |
| Miller, Brian Karl | |
| Moshimer, Robert D | |
| Muhammad, Khalid Munir | |
| Mullens, Leon E | |
| Mullins, Mark E | |
| Murray, Artinez Lejuan | |
| Naelitz, Timothy P | |
| Nemeth, Richard Charles Jr | |
| Nickrand, Cody James | |
| Niebrzydowski, Gregory A | |
| O'Neill, Valerie | |
| Page, Nicholas Paul | |
| Pantuso, Mark Alan | |
| Parker, Corey Robert | |
| Parks, Rafael JR | |
| Pendergrass, Matthew S | |
| Perri, Antonio | |
| Peters, Justin Edward | |
| Phillips, Jamar Norman | |
| Pinter, Francis Gordon | |
| Poddam, Richard D | |
| Pollard, Laystonia | |
| Powell, Chinka | |
| Preuss, Douglas E | |
| Prez, Craig C | |
| Ringler, Edward C | |
| Robertson, Christopher James | |
| Robinson, Danny Allen | |

| | |
|---|---|
| Robinson, Michael J | |
| Russo, Barbara A | |
| Sammons, Mickey Charles | |
| Samonek, Scott G | |
| Schlick, William Homer III | |
| Schock, Michael | |
| Schoon, Richard A | |
| Schultz, James C | |
| Scott, Shamora Annie | |
| Shell, Jason A | |
| Short, Barry S | |
| Siebe, Robert N Jr | |
| Silagy, Sean L | |
| Simon, Glenn Allen | |
| Sizemore, Jessie Paul | |
| Smith, Dennis A | |
| Smith, Dennis M | |
| Smith, Mavis | |
| Smouthers, Brian Anthony | |
| Snyder, Joseph C | |
| Spencer, Michael J | |
| Spencer, Shaquille A | |
| Stapleton, Steven J | |
| Stapleton, Timothy Michael | |
| Stokosa, Ronald Joseph | |
| Sword, Craig | |
| Szolach, Michelle Lee | |
| Taylor, Ywatanna Samone | |
| Thomas, Carrie Ann | |
| Thomas, Melvin K JR | |
| Thomason, Yvette Renae | |
| Thompson, David Andrew | |
| Townsend, Duane L | |
| Travis, Russell L | |
| Turner, Robert James | |
| Tyrna, Paul Reese | |
| Vaughan, Robert Albert | |
| Ward, Darryl Junior | |
| Wendt, David | |
| Wendt, Wendy A | |
| Werner, Jacob William | |
| Williams, Don La Rue Jr | |
| Williams, Martiz Lamont | |
| Wright, Andrew | |
| Zarazua, Sabino | |
| **Grand Total** | |

# TAB  C

## Check Release Language

***Attention Please Read Carefully***: You signed and submitted a Consent Form and agreed to be bound by any resolution of the claims in the lawsuit. Because you agreed to be bound, your release of claims is effective upon your receipt of the enclosed check. By receiving the enclosed check (or cashing, depositing, or transferring the funds) you agree to a full and complete release of any and all wage and hour claims, including any claims under the Fair Labor Standards Act and any state or local law that you may have against the Released Parties. The release includes, by way of example, claims related to minimum wage, overtime pay, wage rates, timekeeping, or time worked, and specifically include the claims you raised or could have raised in the lawsuit *David Athan, et al v. United States Steel Corporation,* Case No. 17-cv-14220 pending in the United States Court (Eastern District of Michigan). The Released Parties include: (1) United States Steel Corporation, its parents, subsidiaries, divisions, predecessors, successors, affiliated and related entities, and (2) their employees, trustees, officers, directors, stockholders, attorneys, agents, fiduciaries, insurers and assigns.

45197684.3