UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| **DAVID ATHAN, DARYL JACKSON, COREY PARKER, DENNIS SMITH, AND JOSH FLANNERY**[1]**,** on behalf of themselves and all other persons similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>**UNITED STATES STEEL CORP.**,<br><br>Defendant. | 17-CV-14220-TGB-DRG<br><br>**OPINION AND ORDER APPROVING SETTLEMENT** |

The Parties, through their Joint Motion to Approve Settlement, have sought this Court's approval of their settlement of Plaintiffs' Fair Labor Standards Act ("FLSA") claims and an order dismissing the case with prejudice and without further costs or fees beyond those in the settlement. At a hearing on the motion, the Court instructed Parties to file their Settlement Agreement on the docket with the monetary rewards redacted, as proposed by the Parties themselves. Settlement Agreement, Ex. 4, ECF No. 83; *see* ECF No. 81, PageID.2701 at n.4. Now that they have done so, for the reasons set forth, the Parties' Motion is **GRANTED**.

---

[1] As the personal representative of the Estate of Robert Flannery. *See* ECF No. 76.

1

## I. BACKGROUND

On December 29, 2017, Plaintiffs filed a Complaint and Jury Demand initiating this action on behalf of themselves and all other persons similarly situated, seeking damages for alleged violations of the Fair Labor Standards Act ("FLSA"). ECF No. 1. Plaintiffs asserted four claims:

> Count I: Violation of the Minimum Wage Provisions of the FLSA—Timely Payment. In this count, Plaintiffs sought liquidated damages for what they claimed were delayed payments of minimum wage when they purportedly "did not receive payment for all hours worked until subsequent pay periods," (ECF No. 1, PageID.12);

> Count II: Violation of the Overtime Provisions of the FLSA—Timely Payment. In this count, Plaintiffs sought liquidated damages for what they claimed were delayed payments of overtime when they purportedly "did not receive payment for all overtime hours worked until subsequent pay periods, in violation of the overtime wage requirement provision of 29 U.S.C. § 207(a)," (ECF No. 1, PageID.15);

> Count III: Violation of the Minimum Wage Provisions of the FLSA—Nonpayment. In this count, Plaintiffs sought unpaid minimum wage and liquidated damages for hours worked which they claimed were unpaid as of the filing of the Complaint, (ECF No. 1, PageID.17); and

> Count IV: Violation of the Overtime Provisions of the FLSA—Nonpayment. In this final count, Plaintiffs sought unpaid wages and liquidated damages for overtime wages which they claimed were unpaid as of the filing of the Complaint (ECF No. 1, PageID.19).

On February 4, 2019, in an Order resolving Defendant's Motion to Dismiss Plaintiffs' Second Amended Complaint, the Court dismissed Plaintiffs' claims for delayed payment of minimum wage (Count I) and unpaid minimum wage (Count III). ECF No. 46. Plaintiffs' claims for delayed payment of overtime (Count II) and unpaid overtime (Count IV) were permitted to proceed. *Id.*

The Parties next engaged in significant pre-conditional certification discovery—including document productions, written discovery, and depositions—aimed solely at determining the appropriateness of FLSA collective action conditional certification. Eventually, and based on that discovery, the Parties negotiated and submitted a Joint Stipulated Order of Conditional Certification, which was entered on March 18, 2019, conditionally certifying the following group of individuals pursuant to Section 216(b) of the FLSA, known as the "Conditional Collective Group":

> All hourly employees in the Production and Maintenance Bargaining Unit at Great Lakes Works, including Zug Island and Dearborn, who during the time period February 14, 2016 through March 11, 2019 had a retro adjust inquiry or retro adjust lump sum to his or her paycheck for previously unpaid overtime as defined by the Fair Labor Standards Act.

ECF No. 55, PageID.2348.

Through the notice procedure agreed to by the parties and approved by the Court, 228 Plaintiffs opted into this lawsuit. The Parties then examined the payments received by each Plaintiff through a negotiated meet-and-confer process. ECF No. 81, PageID.2680-81.

3

Before further significant merits discovery on the entire group of opt-ins, the Parties agreed to attend mediation. In advance of mediation, they engaged in preliminary negotiations and exchanged competing methods for computing Plaintiffs' potential damages. Thereafter, the Parties utilized an independent, experienced third party mediator to resolve this matter. *Id.* at PageID.2681-82. The Parties' compromise has been memorialized in the Release and Settlement Agreement (the "Settlement Agreement") they submitted to the Court for review.

The Settlement Agreement provides, *inter alia*: monetary payments to the Plaintiffs representing a percentage of their claimed damages in light of the legal and factual issues; a service award to each of the Named Plaintiffs; reimbursement of certain litigation costs; and an attorneys' fee to Plaintiffs' Counsel. In exchange, Plaintiffs agree to release Defendant from all wage and hour claims and dismiss this case with prejudice. *Id.* at PageID.2683; *see also* Settlement Agreement, Ex. 4, ECF No. 83.

The Parties stipulate that the negotiated voluntary compromise is appropriate because the Parties recognize the costs and their respective risks associated with proceeding with protracted, distracting, and expensive litigation on the various issues in contention. ECF No. 81, PageID.2683. The Parties have also asked the Court for permission to keep the settlement terms confidential, or at a minimum to keep the specific monetary figures in the settlement confidential. The Court held a hearing on this Motion on February 24, 2021.

## II. STANDARD OF REVIEW

Although the Sixth Circuit has never definitively answered the question of whether court approval is required for FLSA settlement agreements, district courts in our Circuit regularly find that the FLSA context counsels in favor of courts approving settlements. *See, e.g., Steele v. Staffmark Investments, LLC*, 172 F. Supp. 3d 1024, 1026 (W.D. Tenn. 2016) (indicating that the Sixth Circuit's holding in *Runyan v. Nat'l Cash Register Corp.*, 787 F.2d 1039, 1042-43 (6th Cir. 1986) makes it likely that the Court would require approval of FLSA settlements); *Arrington v. Mich. Bell Tel. Co.*, 2012 U.S. Dist. LEXIS 157362, *1 (E.D. Mich. Nov. 2, 2012) (*citing Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1354 (11th Cir. 1982)). *See also* Alex Lau, Note, *The FLSA Permission Slip: Determining Whether FLSA Settlements and Voluntary Dismissals Require Approval*, 86 Fordham L. Rev. 227, 244 (2017).

"Before this Court can approve the settlement of Plaintiff's FLSA claim, the Court must determine that the parties were engaged in a *bona fide* dispute and that the settlement is a fair and reasonable compromise of the issues presented." *Lakosky v. Discount Tire Co., Inc.*, 2015 WL 4617186, at *1 (E.D. Mich., July 31, 2015). A bona fide dispute has to do with whether some issue of the employer's liability is "actually and reasonably in dispute." *Snook v. Valley Ob-Gyn Clinic, P.C.*, No. 14-CV-12302, 2015 WL 144400, at *1 (E.D. Mich. Jan. 12, 2015). *See also*

5

*O'Bryant v. ABC Phones of N. Carolina, Inc.*, No. 19-CV-02378-SHM-TMP, 2020 WL 7634780, at *7 (W.D. Tenn. Dec. 22, 2020).

Next, to determine whether a proposed FLSA settlement is fair and reasonable, courts consider, as applicable: (1) the risk of fraud or collusion; (2) the complexity, expense, and likely duration of the litigation; (3) the amount of discovery completed; (4) the likelihood of success on the merits; (5) the opinion of class counsel and representatives; (6) the reaction of absent class members; and (7) public interest in the settlement. *Arrington, supra; Lakosky, supra; Does 1-2 v. Déjà Vu Servs., Inc.*, 925 F.3d 886 (6th Cir. 2019) (citing *Int'l Union, United Auto., Aerospace and Agr. Implement Workers of Am. v. Gen. Motors Corp.*, 497 F.3d 615, 631 (6th Cir. 2007)); *Granada Invs., Inc. v. DWG Corp.*, 962 F.2d 1203, 1205 (6th Cir. 1992).

### III. ANALYSIS

#### A. Presence of a bona fide dispute

After the Court's Order on the Motion to Dismiss, Plaintiffs' remaining claims are for: (1) allegedly unpaid overtime and (2) overtime that was allegedly paid late—that is, in a pay period subsequent to the pay period for the workweek in which the overtime hours were worked. ECF No. 46, PageID.2269.

After significant discovery, the Parties agree that there is no evidence of any currently unpaid overtime wages (Count IV of the Complaint). Plaintiffs have received all their overtime wages and the

6

disputed legal issues remaining relate only to the timeliness of those previously received overtime payments. ECF No. 81, PageID.2691.

As to Plaintiffs' allegation of delayed overtime (Count II of the Complaint), because the parties have agreed to resolve the dispute through compromise, the following will not be litigated to conclusion: (a) whether a statutory claim for delayed overtime exists under the FLSA; (b) if so, whether Plaintiffs' receipt of retroactive overtime payments satisfies the FLSA; (c) whether liquidated damages are appropriate; and (d) whether collective action treatment is appropriate. *Id.* at PageID.2691-93.

The Court is familiar with the nature of these legal disputes and agrees that the Parties are resolving a bona fide dispute as to both the factual and legal underpinnings of Plaintiffs' claims. As such, the Court will evaluate the settlement agreement itself.

### B. Evaluation of the Settlement Agreement

#### 1. Absence of fraud or collusion in the settlement

There is no evidence of fraud or collusion in the Parties' settlement. The Parties reached an arms' length settlement over the course of a 12-hour mediation with an independent third-party mediator (David Calzone). Both sides' best interests were represented by experienced and prepared counsel of their choosing.

The payments received by the Plaintiffs do not suggest fraud or collusion. Plaintiffs' alleged damages in this matter consist entirely of

7

liquidated damages to which they claim they are entitled because overtime payments were delayed. The monetary awards for each individual Plaintiff were thus derived by calculating an agreed-upon percentage of their potential liquidated damages. As one court noted, the average recovery in class actions is seven (7%) to eleven (11%) percent of claimed damages. *Dillworth v. Case Farms Processing, Inc.*, 2010 WL 776933 (N.D. Ohio, March 8, 2010) (discussing average class results while approving an FLSA settlement of one-third of claimed damages). Here, counsel for both sides represented at the hearing that the recovery to Plaintiffs exceeds that average by a considerable amount.[2] The recovery to Plaintiffs in this settlement also exceeds the 3% recovery approved by other courts in FLSA cases. *See*, e.g., *Andriello v. CFI Sales & Marketing, Inc.*, 2012 WL 3264920 (M.D. Fla., Jan. 4, 2012) (approval of a settlement resulting in a 3% recovery of claimed damages).

The Parties' settlement also provides that each Named Plaintiff shall receive an additional flat fee Service Award commensurate with their individual payments, in recognition of their active participation in the lawsuit. The Court finds that the Service Awards are not indicative of any collusion or fraud given their relatively low amount and their

---

[2] The parties disagreed as to the degree to which Plaintiffs' recovery exceeded the average: counsel for Plaintiffs indicated it was close to "62%" while counsel for Defendants stated that he thought it "might be lower than that, but still higher than the 7-11%." Nevertheless, the Court is satisfied that the recovery to Plaintiffs is above average for these types of cases.

8

proportionality to the overall recovery. *See, e.g.*, *McFarlin v. Word Enterprises, LLC*, No. 16-CV-12536, 2020 WL 2745300, at *2 (E.D. Mich. May 27, 2020) (service awards of $10k and $5k for a total $650k settlement); *Daoust v. Maru Rest., LLC*, No. 17-CV-13879, 2019 WL 2866490, at *5 (E.D. Mich. July 3, 2019) (service award of $5k for a total $945k settlement).

The Court is familiar with this case and the genuinely high stakes it presented for either side were it to be litigated to judgment. The Parties' settlement eliminates the risks and costs both sides would bear if this litigation continued—from possible decertification of the collective class (potentially resulting in multiple individual actions) to complete adjudication on the merits through trial, final judgment, and potential appeal(s). The Court is satisfied that, in reaching agreement on the proposed settlement, the Parties had sufficient information and conducted an adequate investigation to allow them to make an educated and informed analysis and conclusion as to the strengths and weaknesses of Plaintiffs' claims in comparison to their respective costs and the risks associated with further drawn-out litigation.

### 2. Complexity, expense, and likely duration of the litigation

The complexity, expense, and length of continued litigation militate in favor of this settlement. Plaintiffs' claims are complex in theory and factually nuanced. For example, ultimately determining whether any

9

retroactive payroll payment received by a Plaintiff is an actual violation of the FLSA would require a detailed analysis of the statutory and case law, the payment's circumstances, the specific way in which Defendant received notice of the need to make such payment, and the timeliness in processing the payment. The legal viability of the claims is disputed by the Parties. The case itself involves a twenty-four hour manufacturing operation, 228 Opt-In Plaintiffs across multiple shifts and locations, a one-of-a-kind payroll system, tens of payroll-approving managers, and a workforce that is permitted under the relevant collective bargaining agreement to switch and trade shifts with coworkers.

Avoiding the significant expense and time of continuing litigation of these complex claims and proofs is in the Parties' best interests. Should this matter continue, the Parties would need to complete significant discovery consisting of depositions and voluminous written discovery and document production. They would then need to brief and argue the competing sides of a decertification motion and then a motion for summary judgment. Based on the resultant rulings, if necessary, the Parties would then have to prepare for and put on a complex and lengthy jury trial. This case would surely proceed for several months.

The Parties have compromised to avoid experiencing either extreme outcome—dismissal for Plaintiffs or an adverse judgment for Defendant. The Parties' settlement is a reasonable means for the Parties to minimize or altogether avoid future time expended, risks, and litigation costs.

### 3. Amount of discovery engaged in by the parties

The Parties engaged in extensive pre-certification discovery in this matter—providing them a well-informed basis to evaluate their respective claims and defenses before deciding to compromise on resolution of this matter. The Named Plaintiffs were all deposed regarding the issues related to conditional certification as a collective action. Plaintiffs deposed two corporate representatives for Defendant regarding the same issues. Each party responded to written interrogatories and requests for production of documents. Defendant alone produced over 8,800 documents. The meet and confer process provided the Parties an in-depth analysis of the maximum amount of liquidated damages that could be claimed for each Opt-In.

The Court is satisfied that the Parties reviewed all of the exchanged and available information and used it to evaluate the merits of their respective claims or defenses in comparison to the costs and risks associated with further litigation. The Parties agree that the settlement is based on the most accurate estimate of Plaintiffs' claimed liquidated damages, adjusted for the purposes of compromise in light of the risks and costs associated with proceeding. ECF No. 81, at PageID.2697-98.

### 4. The likelihood of success on the merits

The likelihood of Plaintiffs' success on the merits, and the amount they would be awarded, is uncertain, further suggesting that this settlement is fair and appropriate. There are many unique factual and

novel legal issues in this matter that make it difficult for the Parties to gauge their respective likelihood of success, resulting in a considerable risk to each side. Thus, the Court agrees that this proposed settlement is a fair and reasonable settlement in relation to the potential risks and uncertain recovery in this case.

### 5. Opinions of class counsel and representatives

Based on the briefing and on the representations made at the hearing, the Court is satisfied with Plaintiffs' Counsels' assertion that the Settlement Agreement is a fair and reasonable compromise of the disputed issues for all the reasons stated in the Parties' Joint Motion. Moreover, the Class Representatives, David Athan, Corey Parker, Robert Flannery, Daryl Jackson, and Dennis Smith, have indicated by signing the proposed Agreement that they believe that the Agreement is a fair and reasonable compromise of the disputed issues and provides for recovery prior to a long, drawn out and risky adjudication of the case's merits. *See* ECF No. 83, PageID.2764-68.

### 6. The reaction of absent class members

Because this is an opt-in FLSA collective action, there are no absent class members. The Opt-In Plaintiffs in this case have agreed to be bound by any outcome in this lawsuit whether favorable or unfavorable.

### 7. The public interest
#### a. Public interest based on the general terms of the Settlement Agreement

In general, the public interest is served by the proposed settlement as it implicitly serves the purpose and intent of Congress in enacting the FLSA: "to raise substandard wages and to give additional compensation for overtime work . . . thereby helping to protect this nation 'from the evils and dangers resulting from wages too low to buy the bare necessities of life and from long hours of work injurious to health.'" *U.S. v. Rosenwasser*, 323 U.S. 360, 361 (1945) (*quoting* Sen. Rep. No. 884 (75th Conf., 1st Sess.)). While Plaintiffs earn well above a substandard wage, the Parties recognize that the timing of certain retroactive overtime payments was disputed in this case and Congressional intent has been achieved where Plaintiffs were able to pursue their claims with competent and experienced counsel.

#### b. Parties' desire to keep the Settlement Agreement confidential

The Court is not generally inclined to favor requests, such as that of the Parties, to restrict the review of an FLSA settlement agreement to in camera only and to keep it confidential, rather than posted publicly. The reason for this is that there is a "strong presumption in favor of openness" as to court records. *Shane Grp., Inc. v. Blue Cross Blue Shield of Michigan*, 825 F.3d 299, 305 (6th Cir. 2016) (quoting *Brown & Williamson Tobacco Corp. v. F.T.C.*, 710 F.2d 1165, 1179 (6th Cir. 1983)).

13

FLSA settlements are unlike typical settlement agreements reached between parties to a lawsuit, which are customarily confidential and which courts often do not even see, let alone formally approve. This judicial oversight is uniquely utilized in the FLSA context because it is important to advancing the public interest purpose of the statute: "protecting workers' rights." *Williams v. Alimar Sec., Inc.*, No. CV 13-12732, 2017 WL 427727, at *2 (E.D. Mich. Feb. 1, 2017). Judicial approval of FLSA settlements ensures that plaintiffs are not being strong-armed by an employer with outsize bargaining power, and that future workers with potential FLSA claims can examine previous litigation to understand the scope of their rights and the potential for recovery when those rights are violated. *See generally* Elizabeth Wilkins, *Silent Workers, Disappearing Rights: Confidential Settlements and the Fair Labor Standards Act*, 34 Berkeley J. Emp. & Lab. L. 109 (2013).

The Court therefore agrees with many courts, in our Circuit[3] and others, in finding that "[a]n agreement settling an FLSA claim that is submitted for court approval is indisputably ... a 'judicial document' subject to the presumption of access." *Green v. Hepaco, LLC*, No. 2:13-CV-02496-JPM, 2014 WL 2624900, at *3 (W.D. Tenn. June 12, 2014)

---

[3] The Parties cite to a handful of cases from this Circuit approving FLSA settlements under seal, which generally reach a conclusion without discussing the question of whether these settlements are "judicial documents." ECF No. 81, PageID.2701-02. The Court finds the cited opinions unpersuasive because they contain little to no analysis of the merits of the issue.

14

(quoting *Wolinsky v. Scholastic Inc.*, 900 F. Supp. 2d 332, 337 (S.D.N.Y. 2012)) (collecting cases). Given this presumption, the burden is on the parties to provide "compelling reasons" to justify confidentiality. *Shane Grp.,* 825 F.3d at 305 (citing *In re Knoxville News–Sentinel Co.*, 723 F.2d 470, 476 (6th Cir. 1983)). Even where the Court agrees that keeping some part of the agreement under seal is warranted, the seal must be "narrowly tailored to serve that reason." *Id.*

With this presumption in mind, during the hearing on the motion seeking approval of the Settlement Agreement, the Court questioned Parties in depth about their reasons for pursuing confidentiality of the agreement. The Parties responded that the issue of confidentiality was seen as a lynchpin of their bargain during negotiations, and that without it, they would have been unable to reach a mutual agreement. The most important issue, mainly to the Defendant, was to keep the precise monetary amounts of the damage awards confidential.

After carefully considering this issue, the Court eventually ordered Parties to publish on the docket the full Settlement Agreement, but permitted them to redact the specific dollar amounts of the awards. The Court stated that this would strike a proper balance between the public interest in understanding the nature of their agreement, and Parties' declared interest in avoiding the risks and costs that litigation would bring if confidentiality as to the precise awards could not be maintained. The Court concluded it would be willing to approve the Agreement if this

15

condition of filing the redacted Agreement was fulfilled. The Parties have now done so. ECF No. 83.

The Court finds this to be an acceptable solution for several reasons. First, although Parties provided little support in their written submission as to the reasons why the Settlement Agreement should remain confidential, at the hearing they indicated to the Court that confidentiality of the monetary amounts was a material term of the settlement, vigorously debated over the course of their mediation. Without this baseline provision of confidentiality, the Parties indicated they would not have reached an agreement. Going back to the drawing board in a case as complex as this, where the terms of the agreement appear favorable to the Plaintiffs, would not serve the public interest.[4] Second, information provided by the Parties in their Motion, during the hearing, and reiterated in this Order discloses significant and helpful contextual facts regarding the nature and quality of the recovery for

---

[4] The Court notes that some courts have found this kind of "material term" argument to be insufficient to overcome the presumption of public access to judicial documents. *See, e.g., Wolinsky*, 900 F. Supp. 2d at 338-39 (finding "mutual interest" in confidentiality and "fear of copycat lawsuits" to be insufficient grounds for sealing FLSA settlement) (collecting cases); *David v. Kohler Co.*, No. 115CV01263STAJAY, 2019 WL 6719840, at *4 (W.D. Tenn. Dec. 10, 2019). While the reasoning of these cases is compelling, the Court distinguishes this matter based on (1) the fact that Parties have agreed to post the entire Settlement Agreement with only the monetary amounts redacted and (2) the other circumstances specific to this case as discussed here that permit the public to appreciate and understand the substance of the agreement.

Plaintiffs in this case—for example, the fact that the recovery here is considerably higher than the 7-11% average in similar cases (possibly as much as 62% higher), the exact nature of the issues raised, resolved, and left open, and affidavits from Plaintiffs' counsel describing their hours worked and calculation of their attorneys' fees and costs. This kind of information, combined with the availability of the Settlement Agreement in redacted form, will provide the public more than enough background about the resolution of this case to promote the vindication of the rights of future FLSA plaintiffs. Lastly, potential plaintiffs also have access to significant information about the nature of the substantive legal issues in this case through the Court's prior Orders. *See* ECF Nos. 46, 55.

There is a convincing body of case law holding that an FLSA settlement should not be sealed, or even partially redacted, unless the parties make a showing that overcomes the presumption of public access. *See, e.g., Green*, 2014 WL 2624900, at *6 (citing *Joo v. Kitchen Table, Inc.*, 763 F. Supp. 2d 643, 647 (S.D.N.Y. 2011)); *Steele v. Staffmark*, 172 F. Supp. 3d at 1024; *David*, 2019 WL 6719840, at *4; *Smolinski v. Ruben & Michelle Enterprises Inc.*, No. 16-CV-13612, 2017 WL 835592, at *1 (E.D. Mich. Mar. 3, 2017); *Snook*, 2014 WL 7369904 at *3; *Chime v. Family Life Counseling & Psychiatric Servs.*, No. 1:19CV2513, 2020 WL 6746511, at *2 (N.D. Ohio Nov. 17, 2020) (collecting cases).

In this case, the Court finds that the Parties have made such a showing, given the importance of the confidentiality provision to the

integrity of their agreement, the fact that the posting of the redacted Agreement and the general description of its terms provide an understanding of the nature of its benefits to the parties, and the complexity and novelty of the underlying issues in the litigation. This unique combination of elements persuades the Court that making the redacted Agreement and the general description of its terms available is sufficient to make this case materially accessible to the public. The public interest purpose inherent in the FLSA is therefore adequately served. Under different circumstances or in future cases, the Court might well require the parties to make a full agreement available to the public, but here it is not necessary.

### C.  Plaintiffs' attorneys' fees and costs

The Settlement Agreement also contains provisions for attorneys' fees and costs. Section 216(b) of the FLSA provides that "[t]he court in such action shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and costs of the action." 29 U.S.C. § 216(b). An award of attorneys' fees to a prevailing plaintiff under § 216(b) of the FLSA is mandatory, but the amount of the award is within the discretion of the judge. *Fegley v. Higgins*, 19 F.3d 1126, 1134 (6th Cir. 1994).

The negotiated attorneys' fees and costs being provided under the Settlement Agreement are reasonable given the unique legal theories presented in the case and the amount of resources expended to

investigate, research, analyze, and prepare Plaintiffs' claims for litigation. Specifically, Plaintiffs' Counsel spent a significant amount of time: investigating the potential claims; drafting pleadings and motion responses; engaging in written discovery; preparing for and defending depositions; analyzing each Plaintiff's pay records; meeting and conferring with Defendant's counsel for purposes of identifying the Conditional Collective Group from the Potentially Eligible Opt-Ins that filed a Consent to Join; otherwise corresponding with Defendant's counsel; reviewing documents related to Plaintiffs' theory of delayed overtime; evaluating various damage models; negotiating the Settlement Agreement; and filing this Motion.

Based on its examination of the Agreement and attached affidavits, as well as questioning of Counsel at the hearing, the Court agrees that the attorneys' fees and costs contained in the Settlement Agreement are reasonable. The fees are all the more reasonable given that they are the result of vigorous negotiations between the Parties and are less than the total lodestar actually incurred on this matter by Plaintiffs' Counsel.

## CONCLUSION

The Court finds that the Parties' settlement is a fair and reasonable resolution of a bona fide dispute over FLSA issues that binds the Named Plaintiffs and each Opt-In Plaintiff.[5] As such, the Court **GRANTS** the

---

[5] Given the Parties' mutual willingness to post the Settlement Agreement with the monetary figures redacted, articulated in their

Parties' Joint Motion to Approve Settlement (ECF No. 81), with the modification that the Settlement Agreement is to remain filed on the docket in full with the exact monetary awards redacted. The Court also approves the Parties' Settlement Agreement,[6] and **DISMISSES WITH PREJUDICE** Plaintiffs' Complaint and this action without any further costs or fees to any party.

**SO ORDERED** this 1ST day of March, 2021.

BY THE COURT:

/s/Terrence G. Berg
TERRENCE G. BERG
United States District Judge

---

Motion (ECF No. 81, PageID.2701 at n.4) and confirmed by the Court at the hearing, the Court enters this Order with the understanding that the Agreement's provisions have been "approved by the Court in all material respects" as required by its terms, *see* Section I.A, ECF No. 83, PageID.2755, making the order effective and binding.

[6] The Court did not ask Parties to remove the confidentiality clause (Section I.F) in the Settlement Agreement. ECF No. 83, PageID.2759. However, as per its terms, the confidentiality requirements should be interpreted "as . . . expressly provided by the Court" to allow Plaintiffs to freely discuss the publicly available content of the Agreement with others.